ALABAMA PUBLIC SERVICE COMMISSION ET AL.
*v.* SOUTHERN RAILWAY CO.

No. 395.   Argued February 27–28, 1951.—Decided May 21, 1951.

By special leave of Court, *Merton Roland Nachman, Jr.,* Assistant Attorney General of Alabama, *pro hac vice,* and *Richard T. Rives* argued the cause for appellants. With them on the brief was *Si Garrett,* Attorney General. *A. A. Carmichael,* then Attorney General, and *Wallace L. Johnson,* then Assistant Attorney General, were also on a brief with *Mr. Rives.*

*Charles Clark* argued the cause for appellee. With him on the brief were *Marion Rushton, Earl E. Eisenhart, Jr., Sidney S. Alderman* and *Jos. F. Johnston.*

Mr. Chief Justice Vinson delivered the opinion of the Court.

The Southern Railway Company, appellee, brought this action in the Federal District Court to enjoin the members of the Alabama Public Service Commission and the Attorney General of Alabama, appellants, from enforcing laws of Alabama prohibiting discontinuance of certain railroad passenger service. Appellee's Alabama intrastate service is governed by a statute prohibiting abandonment of "any portion of its service to the public . . . unless and until there shall first have been filed an application for a permit to abandon service and obtained from the commission a permit allowing such abandonment." Ala. Code, 1940, tit. 48, § 106.[1] Severe penalties are prescribed for wilful violation of regulatory statutes or orders of the Commission by utilities or their employees. *Id.* §§ 399, 400, 405.

Appellee operates a railroad system throughout the South. This case, however, involves only that Alabama

---

[1] Upon the filing of an application for permission to discontinue, the statute provides for notification of municipal officials, publication of notice in the area affected by the change in service, and a hearing by the Commission. Ala. Code, 1940, tit. 48, § 107. "The commission, as it deems to the best interest of the public, may grant in part or in whole, or may refuse such applications, . . . ." *Id.* § 108.

intrastate passenger service furnished by trains Nos. 7 and 8 operated daily between Tuscumbia, Alabama, and Chattanooga, Tennessee, a distance of approximately 145 miles mainly within Alabama. On September 13, 1948, appellee applied to the Alabama Public Service Commission for permission to discontinue trains Nos. 7 and 8, alleging that public use of the service had so declined that revenues fell far short of meeting direct operating expenses. After hearing evidence at Huntsville, Alabama, one of the communities served by the trains, the Commission entered an order on April 3, 1950, denying permission to discontinue on the grounds that there exists a public need for the service and that appellee had not attempted to reduce losses through adoption of more economical operating methods.

Instead of pursuing its right of appeal to the state courts,[2] appellee filed a complaint in the United States District Court alleging diversity of citizenship and that requiring continued operation of trains Nos. 7 and 8 at an out-of-pocket loss amounted to a confiscation of its property in violation of the Due Process Clause of the Fourteenth Amendment. Injunctive relief was prayed to protect appellee from irreparable loss, flowing on the one hand from operating losses in complying with Alabama law or, on the other, from severe penalties for discontinuance of service in the face of that law. A three-judge court[3] heard evidence, made its own findings of fact and entered judgment holding the Commission order void and permanently enjoining appellants from taking any steps to enforce either the Commission order or the penalty

---

[2] Ala. Code, 1940, tit. 48, §§ 79 *et seq.*

[3] Under 28 U. S. C. (Supp. III) § 2281, only a district court of three judges may issue an injunction restraining enforcement of "any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State stat-

provisions of the Alabama Code in relation to the discontinuance of trains Nos. 7 and 8.[4]   91 F. Supp. 980 (1950).   The case is properly here on appeal, 28 U. S. C. (Supp. III) § 1253.

Federal jurisdiction in this case is grounded upon diversity of citizenship as well as the allegation of a federal question.   Exercise of that jurisdiction does not involve construction of a state statute so ill-defined that a federal court should hold the case pending a definitive construction of that statute in the state courts, *e. g., Railroad Commission of Texas* v. *Pullman Co.,* 312 U. S. 496 (1941); *Shipman* v. *DuPre,* 339 U. S. 321 (1950). We also put to one side those cases in which the constitutionality of a state statute itself is drawn into question, *e. g., Toomer* v. *Witsell,* 334 U. S. 385 (1948).   For in this case appellee attacks a state administrative order issued under a valid regulatory statute designed to assure the provision of adequate intrastate service by utilities operating within Alabama.[5]

Appellee takes the position, adopted by the court below, that whenever a plaintiff can show irreparable loss caused

utes . . . ."   The word "statute" comprehends all state legislative enactments, including those expressed through administrative orders. *American Federation of Labor* v. *Watson,* 327 U. S. 582, 591–593 (1946); *Oklahoma Natural Gas Co.* v. *Russell,* 261 U. S. 290, 292 (1923).

[4] Appellants contend for the first time in this Court that a suit to restrain state officials from enforcing unconstitutional state laws is, in effect, a suit against the state prohibited by the Eleventh Amendment.   The contention is not tenable in view of the many cases prior to and following *Ex parte Young,* 209 U. S. 123 (1908), in which this Court has granted such relief over the same objection.

[5] The Alabama statute requiring application for a permit from the Alabama Public Service Commission before discontinuing transportation service was upheld by this Court in *St. Louis-San Francisco R. Co.* v. *Alabama Public Service Commission,* 279 U. S. 560 (1929). The statute was recently construed and applied by the Alabama Supreme Court in *Alabama Public Service Commission* v. *Atlantic Coast Line R. Co.,* 253 Ala. 559, 45 So. 2d 449 (1950).

by an allegedly invalid state administrative order ripe for judicial review in the state courts the presence of diversity of citizenship or a federal question opens the federal courts to litigation as to the validity of that order, at least so long as no action involving the same subject matter is actually pending in the state courts. But, it by no means follows from the fact of district court jurisdiction that such jurisdiction must be exercised in this case.[6] As framed by the Court in *Burford* v. *Sun Oil Co.*, 319 U. S. 315, 318 (1943), the question before us is:

"Assuming that the federal district court had jurisdiction, should it, as a matter of sound equitable discretion, have declined to exercise that jurisdiction here?"

In assessing the propriety of equitable relief, a review of the regulatory problem involved in this case is appropriate.

Appellee conducts an interstate business over the same tracks and by means of the same trains involved in this case, and such interstate activities are regulated by the Federal Interstate Commerce Commission, 49 U. S. C. §§ 1 *et seq.* But, it has long been held that this interblending of the interstate and intrastate operations does not deprive the states of their primary authority over intrastate transportation in the absence of congressional action supplementing that authority. *Minnesota Rate Cases,* 230 U. S. 352 (1913). And Congress has since provided:

"That nothing in [the Interstate Commerce Act] shall impair or affect the right of a State, in the exercise of its police power, to require just and rea-

---

[6] *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 504–505 (1947); *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293, 297 (1943); *Atlas Life Ins. Co.* v. *W. I. Southern, Inc.,* 306 U. S. 563, 570 (1939); *Canada Malting Co., Ltd.* v. *Paterson Steamships, Ltd.,* 285 U. S. 413, 422–423 (1932).

sonable freight and passenger service for intrastate business, except insofar as such requirement is inconsistent with any lawful order of the [Interstate Commerce Commission]." 49 U. S. C. § 1 (17) (a).[7]

This Court has held that regulation of intrastate railroad service is "primarily the concern of the state." *North Carolina* v. *United States,* 325 U. S. 507, 511 (1945) (rates); *Palmer* v. *Massachusetts,* 308 U. S. 79 (1939) (discontinuance of local service).

State and federal regulatory agencies have expressed concern over the chronic deficit arising out of passenger train operations as a threat to the financial security of the American railroads and have recommended drastic action to minimize the deficit, including the discontinuance of unpatronized and unprofitable service.[8] However, our concern in this case is limited to the propriety of a federal court injunction enjoining enforcement of a state regulatory order.[9]

The court below justified the exercise of its jurisdiction with a finding that continued operation of trains Nos.

---

[7] Appellee seeks to discontinue only two of several passenger trains serving the same communities. This is a proposed partial discontinuance and not an abandonment over which the Interstate Commerce Commission is given exclusive authority under 49 U. S. C. §§ 1 (18–20). *Colorado* v. *United States,* 271 U. S. 153 (1926). The I. C. C. has held that it has no authority under 49 U. S. C. §§ 1 (18–20) to authorize a partial discontinuance as such of intrastate passenger service. *Kansas City Southern R. Co.,* 94 I. C. C. 691 (1925); *New York Central R. Co.,* 254 I. C. C. 745, 765 (1944).

[8] See 64th Annual Report, Interstate Commerce Commission (1950) 5–6; 63d Annual Report, Interstate Commerce Commission (1949) 4–5; *Increased Freight Rates, 1948,* 276 I. C. C. 9, 32–40 (1949); Proceedings, 61st Annual Convention, National Association of Railroad and Utilities Commissioners (1949) 378–382, 410–414.

[9] As the jurisdiction of the Interstate Commerce Commission under 49 U. S. C. § 13 (4) has not been invoked for decision as to whether the continuance of this intrastate service constitutes an undue discrimination against interstate commerce, we cannot, in this proceeding,

7 and 8 would result in confiscation of appellee's property in violation of the Due Process Clause of the Fourteenth Amendment. In pursuing the threshold inquiry whether a federal court should exercise jurisdiction in this case, we find it unnecessary to consider issues relating to the merits of appellee's case, issues which appellants did not see fit to raise in this Court either in their Statement of Jurisdiction or in their briefs. We do note that in passing upon similar contentions in the past, this Court has recognized that review of an order requiring performance of a particular utility service, even at a pecuniary loss, is subject to considerations quite different from those involved when the return on the entire intrastate operations of a utility is drawn into question. *Atlantic Coast Line R. Co.* v. *North Carolina Corporation Commission,* 206 U. S. 1, 24–27 (1907). The problems raised by the discontinuance of trains Nos. 7 and 8 cannot be resolved alone by reference to appellee's loss in their operation but depend more upon the predominantly local factor of public need for the service rendered. *Chesapeake & Ohio R. Co.* v. *Public Service Commission of West Virginia,* 242 U. S. 603, 608 (1917).

The Alabama Commission, after a hearing held in the area served, found a public need for the service. The court below, hearing evidence *de novo,* found that no public necessity exists in view of the increased use and availability of motor transportation. We do not attempt to resolve these inconsistent findings of fact. We take note, however, of the fact that a federal court has been asked to intervene in resolving the essentially local problem of balancing the loss to the railroad from continued operation of trains Nos. 7 and 8 with the public need

consider any impact the order of the Alabama Public Service Commission might have on interstate commerce. *Western & Atlantic R. Co.* v. *Georgia Pub. Serv. Comm'n,* 267 U. S. 493 (1925), and cases cited therein.

for that service in Tuscumbia, Decatur, Huntsville, Scottsboro, and the other Alabama communities directly affected.

Not only has Alabama established its Public Service Commission to pass upon a proposed discontinuance of intrastate transportation service, but it has also provided for appeal from any final order of the Commission to the circuit court of Montgomery County as a matter of right. Ala. Code, 1940, tit. 48, § 79. That court, after a hearing on the record certified by the Commission, is empowered to set aside any Commission order found to be contrary to the substantial weight of the evidence or erroneous as a matter of law, *id*. § 82, and its decision may be appealed to the Alabama Supreme Court. *Id*. § 90. Statutory appeal from an order of the Commission is an integral part of the regulatory process under the Alabama Code. Appeals, concentrated in one circuit court, are "supervisory in character." *Avery Freight Lines, Inc.* v. *White*, 245 Ala. 618, 622–623, 18 So. 2d 394, 398 (1944). The Supreme Court of Alabama has held that it will review an order of the Commission as if appealed directly to it, *Alabama Public Service Commission* v. *Nunis*, 252 Ala. 30, 34, 39 So. 2d 409, 412 (1949), and that judicial review calls for an independent judgment as to both law and facts when a denial of due process is asserted. *Alabama Public Service Commission* v. *Southern Bell Tel. & Tel. Co.*, 253 Ala. 1, 11–12, 42 So. 2d 655, 662 (1949).

The fact that review in the Alabama courts is limited to the record taken before the Commission presents no constitutional infirmity. *Washington ex rel. Oregon R. & N. Co.* v. *Fairchild*, 224 U. S. 510 (1912). And, whatever the scope of review of Commission findings when an alleged denial of constitutional rights is in issue, it is now settled that a utility has no right to relitigate factual questions on the ground that constitutional rights are involved. *New York* v. *United States*, 331 U. S. 284,

334–336 (1947); *Railroad Commission of Texas* v. *Rowan & Nichols Oil Co.*, 311 U. S. 570, 576 (1941). Appellee complains of irreparable injury resulting from the Commission order pending judicial review, but has not invoked the protective powers of the Alabama courts to direct the stay or supersedeas of a Commission order pending appeal. Ala. Code, 1940, tit. 48, §§ 81, 84.[10] Appellee has not shown that the Alabama procedure for review of Commission orders is in any way inadequate to preserve for ultimate review in this Court any federal questions arising out of such orders.

As adequate state court review of an administrative order based upon predominantly local factors is available to appellee,[11] intervention of a federal court is not necessary for the protection of federal rights. Equitable relief may be granted only when the District Court, in its sound discretion exercised with the "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts," [12] is convinced

---

[10] Compare *Pacific Tel. & Tel. Co.* v. *Kuykendall,* 265 U. S. 196 (1924), where supersedeas was not available to adequately protect federal rights, and *Oklahoma Natural Gas Co.* v. *Russell,* 261 U. S. 290 (1923), where supersedeas was sought but denied by the state court.

[11] Compare such cases as *Bacon* v. *Rutland R. Co.,* 232 U. S. 134 (1914), where State judicial review procedures plus review in this Court were thought to be inadequate. This inadequacy derived from the rationale that the federal right of a utility to be protected from confiscation of its property depended upon "pure matters of fact" to the extent that a *de novo* hearing of such facts in a federal court was essential to the protection of constitutional rights. *Prentis* v. *Atlantic Coast Line R. Co.,* 211 U. S. 210, 228 (1908). See Lilienthal, The Federal Courts and State Regulation of Public Utilities, 43 Harv. L. Rev. 379, 424 (1930). The decisions in *Railroad Commission of Texas* v. *Rowan & Nichols Oil Co.,* 311 U. S. 570, 576 (1941), and *New York* v. *United States, supra,* holding that due process does not require relitigation of factual matters determined by an administrative body, eliminated the premise upon which equitable relief in *Bacon* rested.

[12] *Matthews* v. *Rodgers,* 284 U. S. 521, 525 (1932). See *Pennsylvania* v. *Williams,* 294 U. S. 176, 185 (1935).

that the asserted federal right cannot be preserved except by granting the "extraordinary relief of an injunction in the federal courts." [13] Considering that "[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies," [14] the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court in this case. Whatever rights appellee may have are to be pursued through the state courts. *Burford* v. *Sun Oil Co.*, 319 U. S. 315 (1943); *Railroad Commission of Texas* v. *Rowan & Nichols Oil Co.*, 311 U. S. 570, 577 (1941); *Railroad Commission of Texas* v. *Rowan & Nichols Oil Co.*, 310 U. S. 573, as amended, 311 U. S. 614, 615 (1940).

The Johnson Act, 48 Stat. 775 (1934), now 28 U. S. C. (Supp. III) § 1342, does not affect the result in this case. That Act deprived federal district courts of jurisdiction to enjoin enforcement of certain state administrative orders affecting public utility rates where "A plain, speedy and efficient remedy may be had in the courts of such State." As the order of the Alabama Service Commission involved in this case is not one affecting appellee's rates, the Johnson Act is not applicable. We have assumed throughout this opinion that the court below had jurisdiction, *supra,* p. 345, but hold that jurisdiction should not be exercised in this case as a matter of sound equitable discretion. As this Court held in *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293, 297–298 (1943):

> "This withholding of extraordinary relief by courts having authority to give it is not a denial of the jurisdiction which Congress has conferred on the

---

[13] *Railroad Commission of Texas* v. *Rowan & Nichols Oil Co.*, 310 U. S. 573, as amended, 311 U. S. 614, 615 (1940).

[14] *Railroad Commission of Texas* v. *Pullman Co.*, 312 U. S. 496, 500 (1941).

federal courts . . . . On the contrary, it is but a recognition . . . that a federal court of equity . . . should stay its hand in the public interest when it reasonably appears that private interests will not suffer. . . .

"It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states." [15]

For the foregoing reasons, the judgment of the District Court is

*Reversed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE JACKSON joins, concurring in the result.

The Southern Railway asked leave of the Alabama Public Service Commission to take off two of its passenger trains. The Commission, deeming the service of these runs necessary for the communities served, denied leave. The Railway thereafter applied to the United States District Court for an injunction against the order of the Commission. The bill asking for this injunction was based on a claim under the Due Process Clause of the Fourteenth Amendment. The allegations of the bill and the proof under it failed to establish a substantial claim under the United States Constitution. Under familiar, well-established principles the District Court

---

[15] In *Meredith* v. *Winter Haven*, 320 U. S. 228, 237 (1943), the Court sustained the exercise of jurisdiction by a federal court in a case involving matters of state law, but only where decision "does not require the federal court to determine or shape state policy governing administrative agencies" and "entails no interference with such agencies or with the state courts." The absence of a legal remedy in the federal courts does not of itself justify the granting of equitable relief in such cases. *Atlas Life Ins. Co.* v. *W. I. Southern, Inc.*, 306 U. S. 563, 569–570 (1939).

should have dismissed the bill. The Court likewise directs the District Court to dismiss the bill. But it chooses to do so by a line of argument in plain disregard of congressional legislation. Against that I am compelled to protest.

Alabama has the conventional feature of railroad regulatory legislation requiring leave of the State Public Service Commission for the discontinuance of trains. Ala. Code, 1940, tit. 48, § 106. The Southern Railway Company asked permission to discontinue the two trains on the ground that, as segregated items of its total business in Alabama, these trains were operating at a substantial loss. The Commission refused permission after a full hearing, and no question of procedural due process is before us.

Southern brought its suit to restrain enforcement of the Commission order in the United States District Court for the Middle District of Alabama. The case was heard by a three-judge court, as required by 28 U. S. C. § 2281, and a permanent injunction was granted. A direct appeal to this Court lies from such a decision. 28 U. S. C. § 1253.

In holding that the order of the State Commission violated the Due Process Clause of the Fourteenth Amendment, the District Court relied chiefly upon the fact that the operation of the two trains involved a substantial loss. It has long been settled, however, that a requirement that a particular service be rendered at a loss does not make such a service confiscatory and thereby an unconstitutional taking of property. *St. Louis & S. F. R. Co.* v. *Gill,* 156 U. S. 649, 665–666; *Atlantic Coast Line R. Co.* v. *North Carolina Comm'n,* 206 U. S. 1; *Missouri Pacific R. Co.* v. *Kansas,* 216 U. S. 262, 278; *Chesapeake & O. R. Co.* v. *Public Serv. Comm'n,* 242 U. S. 603; *Puget Sound Traction Co.* v. *Reynolds,* 244 U. S. 574; *Fort Smith Light & Traction Co.* v. *Bourland,* 267

U. S. 330; see *Northern Pacific R. Co.* v. *North Dakota,* 236 U. S. 585, 600.

Unlike a department store or a grocery, a railroad cannot of its own free will discontinue a particular service to the public because an item of its business has become unprofitable. "One of the duties of a railroad company doing business as a common carrier is that of providing reasonably adequate facilities for serving the public. This duty arises out of the acceptance and enjoyment of the powers and privileges granted by the State and endures so long as they are retained. It represents a part of what the company undertakes to do in return for them, and its performance cannot be avoided merely because it will be attended by some pecuniary loss." *Chesapeake & O. R. Co.* v. *Public Serv. Comm'n, supra,* at 607.

It is true that we have, on rare occasion, found an order requiring service so arbitrary as to constitute confiscation. Thus, in *Northern Pacific R. Co.* v. *North Dakota, supra,* the State was attempting to force railroads to subsidize production of a particular commodity. In *Mississippi Comm'n* v. *Mobile & O. R. Co.,* 244 U. S. 388, the Court concluded: "Looking to the extent and productiveness of the business of the company as a whole, the small traveling population to be served, the character and large expense of the service required by this order, and to the serious financial conditions confronting the carrier, with the public loss and inconvenience which its financial failure would entail, we fully agree with the District Court in concluding that the order of the commission at the time and under the circumstances when it was issued was arbitrary and unreasonable . . . ." *Id.* at 396.

In the case before us, the trains involved, Nos. 7 and 8, are local passenger trains operated between Sheffield-Tuscumbia, Alabama, and Chattanooga. Southern operates four other trains between these points. Nos. 45 and 46 do not stop at all stations and operate on a schedule

354

inconvenient to the public here concerned. The State Commission found that the schedules of Nos. 35 and 36 "are not comparable to" those of Trains 7 and 8 and do not afford the same convenience.

It appears that the operation of Trains 7 and 8 resulted in a loss of $8,527.24 per month during the twelve-month period ending February 28, 1949. During the five-month period ending July 31, 1949, the loss amounted to $10,738.51 per month. But the railroad made no claim that it is operating at a loss, or failing to receive a fair return, either on its total investment or upon its investment within the State of Alabama. The record contains only the sketchiest findings concerning the operation of the railroad in its entirety. But it does appear that, although Southern has operated its passenger business at a loss aside from the war years, it has earned a substantial net operating income upon both its entire business and its service within the State of Alabama.[1] This litigation seems to have been concerned almost exclusively with the operations of Trains 7 and 8. No showing whatever was made that by the loss incurred in running these trains Southern was deprived of that protection for its investment in Alabama which alone can be made the basis of a claim under the Due Process Clause of the Fourteenth

---

[1] The record contains no allegations or findings on the value of the railroad's property and no particulars concerning its accounting system. Finding 23 indicates that the railroad has had the following yearly "net operating income" from its entire business:

| | |
|---|---|
| 1931–1941 (average) | $16,232,045 |
| 1942–1945 (average) | 35,561,045 |
| 1946–1948 (average) | 23,278,299 |

Finding 24 indicates that the railroad has had the following yearly "net operating income" from its service within Alabama:

| | |
|---|---|
| 1936–1941 (average) | $1,508,282 |
| 1942–1945 (average) | 4,220,203 |
| 1946–1948 (average) | 2,598,459 |

Amendment. The lack of merit in the plaintiff's case is so clear that it calls for dismissal of the complaint.

Instead, as we have stated, this Court rests its decision on a ground that requires it to overturn a long course of decisions and, in effect, to repeal an act of Congress defining the jurisdiction of the district courts. It is undisputed that the plaintiff is asserting a claim under the Federal Constitution. The Court admits that the District Court has jurisdiction of the suit. 28 U. S. C. §§ 1331, 1332. It is said, however, that the District Court must decline to exercise this jurisdiction because judicial review of the order could have been had in the State courts.

In 1875, Congress for the first time (barring the abortive Act of 1801) opened the federal courts to claims based on a right under the Constitution or laws of the United States. Act of March 3, 1875, 18 Stat. 470.[2] Theretofore such claims had to be pursued in the State courts and brought to this Court for review of the federal question under § 25 of the Judiciary Act of 1789, 1 Stat. 73, 85. In *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362, 391, we rejected the argument that suit could not be brought in the federal court to restrain the enforcement of a State agency order. The Court has consistently held to the view that it cannot overrule the determination of Congress as to whether federal courts should be allowed jurisdiction, concurrent with the State courts, even where the plaintiff seeks to restrain action of a State agency. *Smyth* v. *Ames,* 169 U. S. 466, 516; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, 40; *Bacon* v. *Rutland R. Co.,* 232 U. S. 134, 137; *Detroit & Mackinac R. Co.* v. *Michigan Comm'n,* 235 U. S. 402; *Oklahoma Natural Gas Co.* v.

---

[2] Jurisdiction over cases where there is diversity of citizenship was conferred by § 11 of the Judiciary Act of 1789. 1 Stat. 73, 78. In *Meredith* v. *Winter Haven,* 320 U. S. 228, we held that in an equity case the District Court could not decline to exercise its jurisdiction merely because matters of State law were involved.

*Russell,* 261 U. S. 290, 293; *Prendergast* v. *New York Telephone Co.,* 262 U. S. 43, 47; *Pacific Telephone & Telegraph Co.* v. *Kuykendall,* 265 U. S. 196, 201; *Railroad & Warehouse Comm'n of Minnesota* v. *Duluth St. R. Co.,* 273 U. S. 625, 628; see *Prentis* v. *Atlantic Coast Line R. Co.,* 211 U. S. 210, 228.

These cases can be overruled. They cannot be explained away. The theory of the cases now discarded was clearly stated in *Willcox* v. *Consolidated Gas Co., supra,* decided the same Term as the *Prentis* case: "That the case may be one of local interest only is entirely immaterial, so long as the parties are citizens of different States or a question is involved which by law brings the case within the jurisdiction of a Federal court. The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." 212 U. S. at 40. What the Court today holds is that if a plaintiff can be sent to a State court to challenge an agency order there is no federal court available to him.[3] Since the body of decisions

---

[3] We are told by the Court: "Compare such cases as *Bacon* v. *Rutland R. Co.,* 232 U. S. 134 (1914), where State judicial review procedures plus review in this Court were thought to be inadequate." There is not the shadow of a hint in the *Bacon* case to warrant such an explanation of it. No such thing was "thought" before today's decision. The *Bacon* case is merely an instance of what until today was the settled doctrine that a railroad company had the choice of going either into the State court or into the federal court to press a federal constitutional claim.

It is suggested that the "inadequacy" of State judicial review, by which the *Bacon* case is now sought to be explained, "derived from the rationale that the federal right of a utility to be protected from confiscation of its property depended upon 'pure matters of fact' to the extent that a *de novo* hearing of such facts in a federal court was essential to the protection of constitutional rights. *Prentis* v. *Atlantic Coast Line R. Co.,* 211 U. S. 210, 228 (1908)."

I regret the necessity for saying again that there is no warrant whatever for this statement. It cannot be found at the place cited in the *Prentis* opinion. That merely repeats the doctrine of the

which hold the contrary is thus to be discarded, they ought not to be left as derelicts on the waters of the law.

In Congress, a prolonged debate has ensued over the wisdom of the broad grants of power made to the federal courts of original jurisdiction—power which may be invoked against State regulation of economic enterprise. Bill after bill has been proposed to prevent the lower federal courts from interfering with such State action. Finally, in 1910, by a provision in the Mann-Elkins Act, Congress provided that an action for an interlocutory injunction to restrain the action of a State officer acting under a statute alleged to violate the Federal Constitution be heard by a court of three judges, with a right of direct appeal to the Supreme Court. Act of June 18, 1910, § 17, 36 Stat. 539, 557. In 1913, this procedure was extended to applications for an interlocutory injunction to restrain enforcement of the order of a State board or commission. Act of March 4, 1913, 37 Stat. 1013. By the same statute, a State was empowered to keep litigation concerning the validity of State agency regulation in its own courts if it was willing to stay the administrative order.[4] In 1925, the provision for a three-judge court and

---

numerous cases after the Act of 1875 that a plaintiff has a choice of State or federal court where a constitutional claim is made:

"All their constitutional rights, we repeat, depend upon what the facts are found to be. They are not to be forbidden to try those facts before a court of their own choosing if otherwise competent. 'A State cannot tie up a citizen of another State, having property within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts.' Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 391; Smyth v. Ames, 169 U. S. 466, 517. See McNeill v. Southern Railway Co., 202 U. S. 543; Ex parte Young, 209 U. S. 123, 165." 211 U. S. at 228.

[4] "It is further provided that if before the final hearing of such application a suit shall have been brought in a court of the State having jurisdiction thereof under the laws of such State, to enforce such statute or order, accompanied by a stay in such State court

direct appeal was extended to a permanent injunction. Act of Feb. 13, 1925, 43 Stat. 936, 938.

Congress, fully aware of the problem, was still not satisfied with the jurisdiction it had left to the federal district courts. Accordingly, in 1934, it passed the Johnson Act which withdrew their jurisdiction over suits to enjoin the enforcement of State rate orders, providing that a remedy was available in the State courts. Act of May 14, 1934, 48 Stat. 775. This restriction on a district court is not here applicable, for the order in controversy is not a rate order. In 1937, Congress further limited federal jurisdiction by providing that a district court could not enjoin enforcement of a State tax statute where a remedy was available in the State courts. Act of Aug. 21, 1937, 50 Stat. 738.

Plainly we are concerned with a jurisdictional issue which has been continuously before Congress and with which it has dealt by explicit and detailed legislation. Congress first made a broad grant of jurisdiction to the federal courts as to all constitutional and other federal claims. Experience gave rise to dissatisfaction with this grant and Congress began to hedge and limit the power. It required that the case be heard by three judges, that a speedy appeal be available, and that the State courts could have exclusive jurisdiction if they would stay the administrative order. It withdrew jurisdiction to enjoin enforcement of State statutes and orders in the two fields where the greatest dissatisfaction with federal jurisdiction existed—rate orders and taxation—so long as a State rem-

---

of proceedings under such statute or order pending the determination of such suit by such State court, all proceedings in any court of the United States to restrain the execution of such statute or order shall be stayed pending the final determination of such suit in the courts of the State." 37 Stat. 1014. See 28 U. S. C. § 2284 (5).

Alabama did not avail itself of this means for taking the litigation from the federal court.

edy was available. But Congress did not take away the power of the district court to decide a case like the one before us. Instead, it recognized by the wording of § 17 of the Mann-Elkins Act and later legislation that it had given a right to resort to the federal courts and that such power was an obligatory jurisdiction, not to be denied because as a matter of policy it might be more desirable to raise such constitutional claims in a State court.

The Court rejects the guidance of these amendatory acts, all placing specific limitations upon the exercise of district court jurisdiction in cases affecting local regulation. Instead, the Court now limits the jurisdiction of the federal courts as though Congress had amended § 1331 of Title 28 to read:

> "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States, *provided that the district courts shall not exercise this jurisdiction where a suit involves a challenge to an order of a state regulatory commission.*" (New matter in italics.)

It does not change the significance of the Court's decision to coat it with the sugar of equity maxims. As we have seen, there is no warrant in the decisions of this Court for saying that the plaintiff has an "adequate remedy at law" merely because he may bring suit in the State courts. An "adequate remedy at law," as a bar to equitable relief in the federal courts, refers to a remedy on the law side of federal courts. *Petroleum Exploration, Inc.* v. *Commission,* 304 U. S. 209, 217; *Di Giovanni* v. *Camden Ins. Assn.,* 296 U. S. 64, 69; *Henrietta Mills* v. *Rutherford County,* 281 U. S. 121, 126; *Risty* v. *Chicago, R. I. & Pac. R. Co.,* 270 U. S. 378, 388. An equity court

may decline to give relief by injunction if the plaintiff would be adequately compensated by money damages, his "remedy at law." *Armour & Co. v. Dallas,* 255 U. S. 280, *Harrisonville v. Dickey Clay Co.,* 289 U. S. 334. But it is not suggested that this suit should have been transferred to the law side of the federal court.

An equity court may also decline to issue an injunction if the interest of the plaintiff is relatively unimportant when compared to some overwhelming public interest. See Mr. Justice Brandeis, dissenting, in *Truax v. Corrigan,* 257 U. S. 312, 354, 374. See also *Virginian R. Co. v. System Federation,* 300 U. S. 515, 552. An equity court, in the exercise of its broad powers, may also decline to give relief if there are special circumstances which make it desirable for the court to stay its hand or decline to interfere. Thus, traditionally, an equity court will be reluctant to interfere with the administration of criminal justice. *Beal v. Missouri Pacific R. Corp.,* 312 U. S. 45. It should avoid decision of a constitutional question when construction of a State statute in the State courts may make such a decision unnecessary. *Railroad Comm'n v. Pullman Co.,* 312 U. S. 496. It may decline to consider a case which involves a specialized aspect of a complicated system of local law outside the normal competence of a federal court. *Burford v. Sun Oil Co.,* 319 U. S. 315, 332 *et seq.* In that case, the majority found that the technicalities of oil regulation and the importance of competent, uniform review made it proper for the District Court to decline to exercise its equity jurisdiction. Again, an equity court, like a court of law for that matter, ought not to hear a case before the plaintiff has exhausted all available nonjudicial legal remedies. *Prentis v. Atlantic Coast Line R. Co., supra.*

Here the plaintiff has exhausted its nonjudicial remedies. *Avery Freight Lines, Inc. v. Persons,* 250 Ala. 40, 32 S. 2d 886 (1947). Concededly there is no State statute

to construe. There is no consideration which should make a court of equity, as a matter of discretion, decline to entertain a bill for an injunction. Nor does the situation in this suit involve a specialized field of State law in which out-of-State federal judges are not at home. On the contrary, the claim that is made here is within the easy grasp of federal judges, and certainly within the competence of three judges bred in Alabama law, with wide experience in its administration. The only reason for declining to entertain the suit is that it may well be more desirable as a matter of State-Federal relations for the order of a State agency to be reviewed originally in the State lower court and not to be challenged in the first instance in a federal court. It is not for me to quarrel with the wisdom of such a policy. But Congress, in the constitutional exercise of its power to define the jurisdiction of the inferior federal courts, has decided otherwise.

Equity by its very nature denies relief if, on balance of considerations of convenience relevant to equity, it would be inequitable to grant the extraordinary remedy of an injunction. Federal courts of equity have always acted on this equitable doctrine. But it was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.

This is so because discretion based solely on the availability of a remedy in the State courts would for all practical purposes repeal the Act of 1875. This Act gave to the federal courts a jurisdiction not theretofore possessed so that a State could not tie up a litigant making such a claim by requiring that he bring suit for redress in its own courts. That jurisdiction was precisely the jurisdiction to hear constitutional challenge to local action on the basis of the vast limitations placed upon State action by the Civil War amendments. And precisely because of objections to the choice of courts given plain-

tiffs by the Act of 1875, Congress, by piecemeal restrictive legislation, did require that some federal claims against local regulatory action be litigated originally in State courts and from there brought here for review.

By one fell swoop the Court now finds that Congress indulged in needless legislation in the Acts of 1910, 1913, 1925, 1934 and 1937. By these measures, Congress, so the Court now decides, gave not only needless but inadequate relief, since it now appears that the federal courts have inherent power to sterilize the Act of 1875 against all proceedings challenging local regulation. For if this decision means anything beyond disposing of this particular litigation it means that hereafter no federal court should entertain a suit against any action of a State agency. For every State must afford judicial review in its courts of a claim under the Due Process Clause if such claim would give a federal court jurisdiction. In the absence of such judicial review in the State courts, State action under the doctrine of *Ohio Valley Co.* v. *Ben Avon Borough,* 253 U. S. 287, would be nugatory because unconstitutional.

I regret my inability to make clear to the majority of this Court that its opinion is in flagrant contradiction with the unbroken course of decisions in this Court for seventy-five years.