41 N.J. Super. 495 (1956)
125 A.2d 415
IN THE MATTER OF THE APPLICATION OF THE CENTRAL RAILROAD COMPANY OF NEW JERSEY FOR PERMISSION TO DISCONTINUE ITS MOTOR BUS SERVICE OPERATED BETWEEN RED BANK AND BEACHWOOD, NEW JERSEY, IN SUBSTITUTION FOR PASSENGER TRAINS NO. 4625 AND NO. 4606, AND IN THE MATTER OF THE APPLICATION OF JERSEY CENTRAL TRANSPORTATION COMPANY FOR APPROVAL OF THE ABANDONMENT OF BUS SERVICE BETWEEN RED BANK AND BEACHWOOD ON THE RED BANK-BEACHWOOD BUS ROUTE. (P.U.C. ROUTE-FILE NO. 094-022)
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1956.
Decided September 28, 1956.
*497 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Earle J. Harrington argued the cause for The Central Railroad Company of New Jersey and Jersey Central Transportation Company (Mr. Harrington and Mr. Judson C. McLester, Jr., of the New York Bar, of counsel).
Mr. Benedict W. Harrington, Deputy Attorney-General, argued the cause for the Board of Public Utility Commissioners of the State of New Jersey (Mr. Grover C. Richman, Jr., attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
We are asked to review the decision of the Board of Public Utility Commissioners denying permission to the Central Railroad Company of New Jersey and its wholly-owned subsidiary, Jersey Central Transportation Company, to discontinue substitute bus service between Red Bank and Beachwood, N.J.
In May 1951 the railroad sought permission from the Board to discontinue the operation of two round-trip passenger trains operating Monday through Saturday between Red Bank and Barnegat. Trains Nos. 4606 and 4625, one *498 leaving Barnegat early in the morning to make connection at Red Bank for New York, and the other returning from Red Bank in early evening, were commuter trains carrying from 25 to 28 passengers. In order to reduce the $73,000 annual deficit resulting from the operation of the Red Bank-Barnegat service, the railroad applied for, and in October 1951 obtained permission from the Board to discontinue this train service on condition that substitute bus service be provided in its place. The substitute bus operation was inaugurated March 21, 1952 by the Jersey Central Transportation Company. Subsequently, by decision dated October 1, 1952, the Board modified its earlier order to permit elimination of the bus service on Saturdays and termination of the Monday-through-Friday operation at Beachwood instead of Barnegat.
Bus passenger volume fell off, so that by September 1955 there was an average of only five passengers on the morning bus from Beachwood to Red Bank, and seven on the return evening trip, two of these seven not holding commuter's tickets. The five commutation passengers used the bus and railroad facilities in getting to and from their employment in mid-town and down-town New York City. The testimony was that the annual out-of-pocket loss for operating the Red Bank-Beachwood bus service was $14,800 a year, taking into consideration all branch revenue and applying no costs for train transportation of passengers between Red Bank and New York City. Otherwise, the loss was $17,000. (It was incidentally testified that the $14,800 was as much money as Jersey Central Railroad Company made from all its operations in 1954.) It further appears that the railroad lost $2,806,000 in 1954 on its passenger service, before any assignment of common expenses to passengers, and expects this loss to increase to over $3,000,000 in view of wage increases under negotiation at the time of the hearing and because of loss of mail revenue.
In the light of the reduced bus passenger volume and the annual losses, the railroad and Jersey Central Transportation Company filed applications on August 31 and September *499 23, 1955, respectively, for authority to discontinue operation of the bus service between Red Bank and Beachwood. At the hearing on the applications petitioners adduced testimony as to the past history of the branch line, bus passenger volume, costs and losses, and available alternate bus service for those using the present bus. Five patrons of the connecting bus service testified in opposition to the applications, four being regular commuters to New York and the fifth an occasional user who purchased single one-way or round-trip tickets. The objectors claimed that discontinuance of the present bus service would prove an inconvenience in travelling to and from their places of employment, and that it would increase their transportation costs because commutation tickets are not available for travel on the proposed alternate bus service running direct to the Port Authority Building in mid-town New York City.
In denying the application the Board of Public Utility Commissioners made four specific findings: (1) there is a "nominal" continuing demand for the present connecting bus service; (2) the proposed alternate bus service between Lakewood and vicinity and New York does not afford comparable service and would not meet the requirements of public convenience and necessity; (3) present out-of-pocket losses in operating the connecting bus service are not disproportionate to the losses that might have been anticipated upon inauguration of the service pursuant to the Board's decision of October 1951; and (4) discontinuance of the present bus service would subject the few remaining patrons to unreasonable inconvenience in travelling between their homes and places of employment.
The first point made by the petitioning railroad and Jersey Central Transportation Company on this appeal is that the Board's findings are inadequate. The Board, of course, was obliged to make findings of basic facts and, if the need appears, state the reasons for its decision. In re Central Railroad Company of N.J., 29 N.J. Super. 32, 38-39 (App. Div. 1953). Petitioners' particular complaint is that the Board failed to make the minimum specific finding *500 that public necessity and convenience either required the continuation of the service in question or that it did not. Such a finding is fundamental to a decision in a case like this. See, for example, In re New Jersey and New York R. Co., 12 N.J. 281, 285, 289 (1953), where a finding was made. The Board in the present case did not make a specific finding of public necessity and convenience, although such a finding might perhaps be spelled out from a liberal reading of the entire decision. A finding as basic as this should not be left to interpretation or conjecture, but should be set out precisely in the decision of the Board, either as its first or concluding finding.
Whatever merit petitioners' first point may possess, our consideration of all the operative facts in the case compels the conclusion that there was not substantial evidence before the Board to support a finding that public convenience and necessity in the circumstances requires a continuation of the present Beachwood to Red Bank bus service.
We should first like to dispose of an argument by petitioners that the Board improperly considered the needs of interstate passengers in reaching its decision on public convenience and necessity. The bus route is wholly intrastate, and the fact that its passengers are bound for New York City does not deprive the State of its regulatory authority. Petitioners cite Pennsylvania R. Co. v. Board of Public Utility Commissioners, 11 N.J. 43 (1952), in support of their argument. We do not so read the case, for the Supreme Court specifically said (11 N.J., at page 49) that "the rule of territorial limitation is not so sweeping that a state cannot through a regularly established tribunal regulate the intrastate operations of an interstate carrier," quoting from State of Colorado v. United States, 271 U.S. 153, 162, 46 S.Ct. 452, 454, 70 L.Ed. 878 (1926). In Alabama Public Service Commission v. Southern Ry. Co., 341 U.S. 341, 345, 71 S.Ct. 762, 766, 95 L.Ed. 1002, 1006-1007 (1951), Chief Justice Vinson declared that "it has long been held that this interblending of the interstate and intrastate operations does not deprive the states of their primary *501 authority over intrastate transportation in the absence of congressional action supplementing authority."
The reception of the commuters' testimony cannot, as petitioners contend, logically be viewed as an indirect method of increasing the Board's jurisdiction to include regulation of interstate commerce.
We turn to the main question: Does public convenience and necessity require the continued operation of the present connecting bus service? Our courts have held that the mere fact that the operation of a particular service results in a pecuniary loss to the railroad does not of itself establish a right to its discontinuance. In re New Jersey and New York R. Co., above, 12 N.J., at page 286; Pennsylvania R.R. Co. v. Board of Public Utility Commissioners, above, 11 N.J., at page 51; Pennsylvania-Reading Seashore Lines v. Board of Public Utility Commissioners, 5 N.J. 114, 122 (1950); and see Alabama Public Service Commissioner v. Southern Ry. Co., above, 341 U.S., at page 347, 71 S.Ct., at page 767, 95 L.Ed., at page 1007.
Among all the factual matters to be considered in determining the question of public convenience and necessity, three are of major importance: (1) the cost of providing the service; (2) the use made by the public of the service; and (3) the availability and adequacy of other transportation facilities. Thompson v. Illinois Commerce Commission, 1 Ill.2d 350, 353, 115 N.E.2d 622, 624 (Sup. Ct. 1953). The factor of public need of the services rendered is the predominant and controlling element. In re New Jersey and New York R. Co., above, 12 N.J., at page 289, and cases cited. "Public convenience and necessity" is not to be gauged by the particular persons who may be benefited at a particular locality, but it means the public generally. The effect of the Board's decision upon the whole public, instead of a relatively few persons, should be taken into consideration. Illinois Central R.R. Co. v. Illinois Commerce Commission, 397 Ill. 387, 395, 74 N.E. 526, 530 (Sup. Ct. 1947); Fornarotto v. Board of Public Utility Commissioners, 105 N.J.L. 28, 36 (Sup. Ct. 1928); and *502 see dissenting opinion in In re New Jersey and New York R. Co., above, 12 N.J., at pages 290-291.
In its decision the Board went no further than to find a "nominal" continuing demand for the existing connecting bus service. It would hardly seem necessary to cite to the Board the dictionary definition of "nominal" as meaning "small, slight, or the like in comparison with what might properly be expected." Webster's New International Dictionary. The use of the present bus service by only five commuters, to which one might even add the two non-commuters who ride on the return bus in the early evening, does not spell out public necessity or convenience, particularly where there is proof of an alternate and satisfactory method of transportation, even though the latter service will cost the individual passenger somewhat more. In Pennsylvania-Reading Seashore Lines v. Board of Public Utility Commissioners, 5 N.J. 114 (1950), there was an application for discontinuance of a service used by an average of 6.2 daily passengers on one train and 8.1 on another. The out-of-pocket loss to the railroad in nine months of operation was $9,262.28. In reversing the order of the Board denying the application for discontinuance the court said:
"* * * It seems unreasonable to interpret R.S. 48:12-99 as requiring the operation of passenger service in a situation when only a nominal number of passengers present themselves for transportation, where other adequate means of public transportation are available, and when such operation results in continued substantial losses." (5 N.J., at page 121)
The test of need is the test of use. Only five commuters regularly used the bus. There was absolutely no evidence that any intrastate passengers either needed or used the service, except for the two afternoon non-commuters.
The second Board finding, that the proposed alternate bus service between Lakewood and vicinity and New York City would not meet the requirements of public convenience and necessity, does not square with the record. The testimony was that the Lincoln Transit Company will provide substitute bus service directly into New York, entirely comparable *503 with the present service. The time of the bus trip will be shorter. The bus will go to mid-town New York, rather than to the down-town area which is the terminus of the present Jersey Central service, thereby eliminating the necessity of a subway trip for some of the five commuters, and requiring only a short trip for others. The connecting subway facilities from the bus terminal are more than adequate. The direct trip to New York will also eliminate the present bus-railroad-ferry journey requiring two changes in order to reach down-town New York. The Lincoln Transit bus will readily accommodate the five passengers who use the present connecting bus. True, the cost of using this alternate service will be somewhat higher than the commutation rate now being charged by the railroad. However, it was testified that Lincoln Transit has under serious consideration the establishment of reduced commutation fares or book fares between the area of commuter residence and New York City. Although the Lincoln Transit bus will not supply transportation of a local nature to certain points along the train route from Red Bank to New York, the demand for this facility is demonstrably meagre on the record.
The third finding, that the present out-of-pocket losses in operating the existing bus service are not disproportionate to the losses that might have been anticipated upon inauguration of that service in March 1952, is in our judgment irrelevant. Indeed, counsel for the Board voluntarily conceded that this was not a good reason. He ventured the suggestion that the case be sent back to the Board to determine whether the deficit suffered by the carrier in operating the connecting buses had any effect upon a determination of public convenience and necessity. A comparison of losses suffered then and now is not the determinant. Actual current operating losses are, as has been noted, a circumstance to be taken into consideration along with the extent of the impairment of public need and convenience.
The fourth finding was that discontinuance would subject the remaining patrons to unreasonable inconvenience. This *504 has already been discussed in dealing with the second finding. The affected commuters would not be unreasonably inconvenienced.
In our view, the railroad and its subsidiary, Jersey Central Transportation Company, presented a clearly meritorious case for discontinuance of the present connecting bus service. For the reasons herein stated, the determination of the Board of Public Utility Commissioners should be reversed.