43 N.J. Super. 13 (1956)
127 A.2d 436
IN THE MATTER OF THE APPLICATION OF THE CENTRAL RAILROAD COMPANY OF NEW JERSEY FOR PERMISSION TO DISCONTINUE ITS MOTOR BUS SERVICE OPERATED BETWEEN FLEMINGTON AND SOMERVILLE, NEW JERSEY, IN SUBSTITUTION FOR PASSENGER TRAINS NO. 1509, NO. 1555, NO. 1500 AND NO. 1550.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1956.
Decided December 7, 1956.
*16 Before Judges GOLDMANN, FREUND and CONFORD.
*17 Mr. Earle J. Harrington argued the cause for the appellant The Central Railroad Company of New Jersey (Mr. Judson C. McLester, Jr., of the New York bar, of counsel).
Mr. Benedict W. Harrington, Deputy Attorney-General, argued the cause for the respondent Board of Public Utility Commissioners (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal from a decision of the Board of Public Utility Commissioners by which the petitioner Central Railroad Company of New Jersey was denied permission to discontinue bus service between Somerville and Flemington, New Jersey. The service consists of one round-trip each weekday, serving the intermediate communities of Three Bridges, Neshanic, Flagtown and Raritan, and connecting with the petitioner's eastbound morning train at Raritan for Jersey City, and with its westbound evening train at Somerville  in effect, a branch line of the railroad.
Prior to 1953 petitioner operated passenger train service on its South Branch to the communities now served by the connecting bus, but the train was patronized by only about 18 persons, resulting in an annual deficit of $18,000. At the time, the petitioner was suffering an annual deficit of $2,500,000 in its passenger service, and its vice-president, Mr. N.N. Bailey, testified in a proceeding before the Board that such losses "constitute a grave threat to continuation of the essential commutation service which with present day facilities only the railroads can perform." The petitioner made a comprehensive survey of its passenger service and of the causes for the large deficit, as a result of which it proposed to reduce its losses by the elimination of duplicate and non-essential train service over lines on which the patronage was insufficient to justify continuance. In accordance with the survey, the petitioner sought to discontinue its passenger train service between Somerville and Flemington, proposing to provide substitute bus service between those *18 points. On February 1, 1953, such permission was granted. By contract with Dilley's Bus Service, the petitioner provided the substitute bus service, thereby reducing the annual deficit in the service from $18,000 to approximately $7,000. Because of the continuing loss, the petitioner now seeks to discontinue the bus operation.
After oral hearing, the Board denied petitioner's application, making in its decision the following specific findings:
"1. That there is a public demand for the service and that the service is convenient for those passengers who use it.
2. That there is no alternate public transportation which covers the entire area served by the bus.
3. That the record contains nothing to show that the bus service would be continued if the support of the applicant were to be withdrawn.
4. That The Central Railroad Company of New Jersey recognized its obligation to furnish transportation in the area between Flemington and Somerville when it inaugurated the bus service in substitution for its passenger trains.
5. That the substitution of bus service for passenger trains was made with full knowledge that a deficit would be continued after the change was made.
6. That the deficit from the bus operation is considerably less than the loss from passenger train operation."
On this appeal the petitioner argues first that the Board's findings are inadequate, citing In re Central Railroad Co. of New Jersey, 29 N.J. Super. 32, 38 (App. Div. 1953). In particular, the petitioning railroad asserts that the findings are wholly insufficient in that they fail even to make explicit whether or not public necessity and convenience require the continuation of the service. While it might be urged, and it is our opinion, that such a finding is implicit in the Board's determination, this court has recently declared that a finding so fundamental to the Board's decision should be "set out precisely in the decision of the Board, either as its first or concluding finding." Application of Central R. Co. of New Jersey, 41 N.J. Super. 495 (App. Div. 1956). Nevertheless, we shall consider the merits of petitioner's appeal, since the Board's decision here under review predates the last-cited Central Railroad case, but we *19 reiterate the admonition that decisions of the Board should include all such fundamental findings as are basic to its determinations. See New Jersey Bell Telephone Co. v. Communications Workers, etc., 5 N.J. 354, 375-379 (1950); Central R. Co. of New Jersey v. Department of Public Utilities, 7 N.J. 247, 261 (1951); Pennsylvania Railroad Co. v. Department of Public Utilities, 14 N.J. 411, 427 (1954); Davis, Administrative Law, § 158, p. 521 and § 162, p. 526 (1951).
The petitioner also contends that the third, fourth, fifth and sixth findings cannot lawfully justify the Board's decision  that the sole factor to be considered is whether public necessity and convenience require continuance of the bus service, notwithstanding that substantial operating loss continues to be incurred. A similar finding was considered in the Central Railroad case, supra (41 N.J. Super., at page 503), where this court found to be irrelevant the fact that the loss then currently being sustained was not disproportionate to what might have been anticipated at the time the service was initiated, with the approval of the Board. Similarly, the fourth finding that the petitioner recognized its obligation to provide transportation and the sixth finding that the present deficit is less than that previously sustained, are not probative on the issue of public necessity and convenience. However, the third finding relates to a critical factor here. The Dilley Bus Service operates six round-trips a day between Somerville and Flemington, but over a different route than that served by its one-a-day train connection service here involved. The purport of the finding is that the Board is doubtful whether the latter service would be continued without the petitioner's financial support. This finding is clearly relevant since it bears upon the factor of alternate public carrier service for those who would be deprived of the service now being rendered. As it is supported by the evidence, it will not here be disturbed.
We proceed now to consider petitioner's principal argument  that public necessity and convenience do not require the continued operation of the bus service. See *20 Annotation, 10 A.L.R.2d 1121. It is settled law that a railroad cannot constitutionally be compelled to furnish service, even over a branch line, at a pecuniary loss, when such service is not required by public necessity and convenience. Pennsylvania-Reading Seashore Lines v. Board of Public Utility Com'rs, 5 N.J. 114, 124-125 (1950), certiorari denied Brotherhood of R.R. Trainmen v. Pennsylvania-Reading Seashore Lines, 340 U.S. 876, 71 S.Ct. 122, 95 L.Ed. 637 (1950); Central R. Co. of New Jersey v. Department of Public Utilities, 10 N.J. 255, 263 (1952), appeal dismissed 345 U.S. 931, 73 S.Ct. 794, 97 L.Ed. 1361 (1953); In re New Jersey & New York R. Co., 12 N.J. 281, 286 (1953), appeal dismissed New Jersey & New York R. Co. v. Board of Public Utility Com'rs, 346 U.S. 868, 74 S.Ct. 123, 98 L.Ed. 378 (1953); Railroad Commission of State of Texas v. Eastern Tex. R. Co., 264 U.S. 79, 44 S.Ct. 247, 68 L.Ed. 569 (1924). However, the mere showing of such loss does not of itself establish a right to discontinue the services and facilities of common carriers. Other factors must be considered, including the extent to which the public uses the service, and the availability and adequacy of alternate transportation facilities. Application of Central R. Co. of New Jersey, supra (41 N.J. Super., at page 501); Thompson v. Illinois Commerce Commission, 1 Ill.2d 350, 353, 115 N.E.2d 622, 624 (Sup. Ct. 1953); 10 A.L.R.2d, supra, at page 1143. In weighing the relative importance of the loss and the factors indicative of public necessity and convenience, primary consideration must be given to the latter. In re New Jersey & New York R. Co., 23 N.J. Super. 1, 8 (App. Div. 1952), affirmed 12 N.J. 281 (1953).
In the instant case the record discloses that an average of 12 passengers for each trip used the bus service during September 1955; of these, eight were commuters to Jersey City and thence by ferry to New York. Petitioner contends that the commuters, being interstate passengers, should not be considered in determining public necessity, urging that the Board has no authority to regulate interstate transportation. This point was raised and properly rejected *21 in Application of Central R. Co. of New Jersey, supra (41 N.J. Super., at pages 500, 501), and we affirm that holding. See Pennsylvania R. Co. v. Board of Public Utility Commissioners, 11 N.J. 43, 49 (1952).
In addition to the eight commuters to New York, an average of four other passengers use the bus to go to Somerville for shopping, work or school. For some, Somerville is the only shopping center and the petitioner's bus service provides the sole means of public transportation. Three of the daily passengers commute from Flemington to New York; for them, there is comparable service via regular bus service to Flemington Junction and from there by Lehigh Valley Railroad train to New York. The petitioner asserts, moreover, that in addition comparable service is available from Three Bridges to New York, via regular bus service, either to the Lehigh Valley train at Flemington Junction or to the Central Railroad train at Raritan in the morning and Somerville in the evening, but a study of bus and train schedules discloses that the regularly scheduled bus trips do not make connections with either Lehigh Valley or Central Railroad trains. No alternate service is offered for commuters from Neshanic and Flagtown; they would be without public transportation. For commuters to whom an alternate service is offered, additional expense is involved, as well as a walk of from one-quarter to one-half mile between the bus and railroad station. Such substitute service can hardly be deemed satisfactory. Clearly, there appears to be no comparable alternate service for some of the present passengers; indeed, several communities would be without public transportation.
In light of these factors, we find clear support for the Board's ruling that there is no alternate public transportation, and, accordingly, conclude that public necessity and convenience require continuance of the present service.
The argument is made that in balancing public necessity against the petitioner's pecuniary loss, the consideration must be that of the general public rather than of relatively few passengers. See Application of Central R. *22 Co. of New Jersey, supra, and cases cited. The interest of the general public lies in the continued operation of our railroads. "One of the duties of a railroad company doing business as a common carrier is that of providing reasonably adequate facilities for serving the public. * * * its performance cannot be avoided merely because it will be attended by some pecuniary loss." Chesapeake & Ohio Ry. Co. v. Public Service Comm., 242 U.S. 603, 37 S.Ct. 234, 236, 61 L.Ed. 520 (1917). However, the continuing financial loss in the operation of commuter transportation is of serious concern not only to the railroads, but also to our economy. It may well be that the railroads should continue to absorb such losses from their profitable freight business; but no business is required indefinitely to sustain financial losses. Alabama Public Service Comm'n v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Pennsylvania-Reading Seashore Lines v. Board of Public Utility Com'rs, supra; 10 A.L.R.2d, supra, at page 1130.
But public convenience lies also in adequate service to the few, as well as to the many. Where lack of other adequate means of transportation appears, the number of the members of the public affected by a proposed discontinuance is not necessarily determinative. Cf. Application of Central R. Co. of New Jersey, supra (41 N.J. Super., at page 502); Pennsylvania-Reading Seashore Lines v. Board of Public Utility Com'rs, supra (5 N.J., at page 121). In every such case the relative needs of the prospective passengers must be weighed against all other relevant factors including the financial security of the railroad, and the ultimate determination is primarily a question for the Board. Unless it appears that the Board's determination is unwarranted in law or unsupported in fact, it should not be disturbed. In re New Jersey & New York Railroad Co., supra. This does not here appear. Affirmed.