PENNSYLVANIA MEDICAL SOCIETY
and Pennsylvania Osteopathic Medical
Association, Plaintiffs,

v.

Joseph T. MARCONIS, M.D.; Lawrence D. Ellis, M.D.; Mark N. Richards, M.D.; Col. George Shevlin; Guy Kratzer, M.D.; Gary W. Lyons, M.D.; Johoshua Arie, M.D.; Jason Shu, M.D.; Shirley Fox, R.N.; Jeanne McKelvey, Esq.; Barbara Shore, Ph.D.; Individually and in their official capacities as members of the State Board of Medicine; and Lawrence S. Koplovitz, D.O.; Anthony A. Minissale, D.O.; Mark N. Richards, M.D.; Col. George Shevlin; John L. Johnston, D.O.; Ernestina T. Agresti, D.O.; Raymond G. Herr; Daniel J. West, Jr., Ph.D.; Individually and in their official capacities as members of the State Board of Osteopathic Medicine, Defendants.

Civ. A. No. 87–1383.

United States District Court,
M.D. Pennsylvania.

Nov. 25, 1987.

As Amended Feb. 17, 1988.

Robert B. Hoffman, Reed, Smith, Shaw and McClay, Harrisburg, Pa., for plaintiff.

Lawrence J. Beaser and Roger F. Cox, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Pennsylvania Osteopathic Medical Ass'n.

John G. Knorr, III and Gwendolyn Mosley, Deputy Attys. Gen., Harrisburg, Pa., for all defendants.

Alexandria Matthews, State Bd. of Osteopathic Medicine, Harrisburg, Pa., for defendants Koplovitz, et al.

MEMORANDUM

RAMBO, District Judge.

*Background*

On October 2, 1987 the Pennsylvania Medical Society filed an action against eleven individual members who comprise the Commonwealth of Pennsylvania's Board of Medicine ("Board of Medicine"). Plaintiff challenges the constitutionality of certain regulations promulgated by the Board of Medicine regarding the "prescribing, administering and dispensing [of] controlled sympathomimetic amines." 49 Pa.Code

§ 16.96. Plaintiff seeks declaratory and injunctive relief. On October 20, 1987 the Pennsylvania Osteopathic Medical Association ("POMA") filed an action against the eight individual members who comprise the State Board of Osteopathic Medicine. This plaintiff challenges the constitutionality of certain regulations promulgated by the Board of Osteopathic Medicine also regarding the "prescribing, administering and dispensing [of] controlled sympathomimetic amines." 49 Pa.Code § 25.211. Plaintiff seeks declaratory and injunctive relief. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). Because the pertinent contents of the challenged regulations are identical in both actions, on October 20, 1987 this court ordered the actions consolidated.

Plaintiffs moved for a preliminary injunction seeking to enjoin enforcement of those portions of the challenged regulations which set durational limitations on the use of sympathomimetic amines and on the sections of the regulations which require waivers for the use of sympathomimetic amines. A hearing was held on November 3, 1987, deposition transcripts were filed, and the parties fully briefed the motion.

On October 14, 1987 the Pennsylvania Medical Society filed suit against the Commonwealth's State Board of Medicine in the Commonwealth Court of Pennsylvania, challenging the same regulations challenged in federal court. As in the case before this court, POMA filed a practically identical complaint in state court, and the actions were consolidated. Plaintiffs challenged the regulations on purely state law grounds. A hearing in state court was held on a motion for a preliminary injunction, and on November 18, 1987 that motion was denied.

*Discussion*

The regulations at issue are an attempt by the State to reduce the incidence of amphetamine drug abuse throughout the Commonwealth. Defendants' Brief in Opposition at 9. These "sympathomimetic amines are a class of medications with certain common chemical and pharmacological characteristics. Some sympathomimetic amines are designated as 'Controlled Substances' under Schedule II–IV of the Controlled Substance, Drug, Device, and Cosmetic Act, 35 P.S. § 780–101 *et seq.*" POMA's Complaint at ¶¶ 14, 15. The regulations contain patient record access and reporting requirements, limitations on the prescription and dispensation of sympathomimetic amines for weight control purposes, and procedures to be followed to obtain a waiver from the Boards for prescribing or administering sympathomimetic amines beyond a forty-five day period in a twelve month period in certain circumstances. POMA's Complaint at Exhibit A; Board of Medicine's Complaint at Exhibit A.

Plaintiffs challenge the waiver provisions alleging, *inter alia,* the regulations "impose unnecessary burdens on physicians, and will deter some patients from receiving and seeking appropriate medical treatment, all without commensurate benefits to the public." POMA's Complaint at ¶ 22. They claim these provisions are violative of the Constitution of the United States:

The regulations challenged herein violate the privacy right to independence in decision-making guaranteed under the Constitution of the United States in that the defendants, not licensed medical doctors chosen by a patient, will be making treatment decisions for that patient.

The regulations challenged herein violate the right of procedural due process under the United States Constitution insofar as they allow defendants to order the termination of ongoing, medically appropriate treatment without appropriate procedural safeguards, including but not limited to notice of the factual and legal bases for the proposed termination of treatment, an opportunity for a hearing including the rights to present testimony and cross-examine, and to receive a written decision following such hearing containing findings and the reasons therefor.

Board of Medicine's Complaint at ¶¶ 31, 32.

Plaintiffs ask the court to declare a state

statute unconstitutional.[1] Principles of comity and federalism counsel the court to consider abstention so that the Commonwealth will have the first opportunity to pass on its own law. *E.g., Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971); *Harrison v. N.A.A.C.P.*, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The judicially created doctrine of abstention was born of

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments.... * * * [T]he concept ... represent[s] ... a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger v. Harris*, 401 U.S. at 44, 91 S.Ct. at 750.

There are three basic classes or types of abstention: *Younger, Pullman* and *Burford. Younger* abstention is required where there are active state proceedings of a criminal nature. A federal court shall not enjoin such proceedings unless it is satisfied that there is bad faith on the part of the state, or that the state is bringing the action for harassment purposes, or unless the statute in question is unmistakenly invalid and the federal plaintiff will suffer irreparable harm. *Younger v. Harris*, 401 U.S. at 45–54, 91 S.Ct. at 751–755. *Younger* abstention has also been involved in instances where the ongoing state proceeding is quasi-criminal in nature, *e.g., Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (state seeking to recoup fraudulently obtained welfare benefits), or where the state is attempting to exercise its power over individuals in a non-criminal setting, *e.g., Juid-*

*ice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (civil contempt).

■ The federal judiciary invokes *Pullman* abstention to permit the state the first opportunity to analyze and rule on an unsettled question of state law. Doing this not only serves the doctrine of federalism by protecting the autonomy of the states, but can also obviate the need for a pronouncement on the constitutionality of a law. Although a federal court may have jurisdiction, it should postpone exercising that jurisdiction "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Allegheny County v. Mashuda*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959).

*Pullman* abstention also avoids inadvertent advisory opinions on constitutional issues. As the Supreme Court just recently stated:

> [An] important reason for abstention is to avoid unwarranted determination of federal constitutional questions. When federal courts interpret state statutes in a way that raises federal constitutional questions, "a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless." *Moore v. Sims*, 442 U.S. 415, 428 [99 S.Ct. 2371, 2380, 60 L.Ed.2d 994] (1979).

*Pennzoil Co. v. Texaco*, —— U.S. ——, ——, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987).

The third type of abstention is *Burford* abstention. In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) the Supreme Court noted the prudence of abstention in cases involving extensive or confusing state regulatory schemes promulgated in areas of important state interests.

---

1. "The word 'statute' comprehends all state legislative enactments, including those expressed through administrative orders." *Alabama Public Service Comm'n v. Southern R. Co.*, 341 U.S. 341, 344 n. 3, 71 S.Ct. 762, 765 n. 3, 95 L.Ed. 1002 (1951).

Sometimes it is not absolutely clear which type of abstention, if any, is appropriate. "The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil*, —— U.S. at —— n. 9, 107 S.Ct. at 1526 n. 9. The instant case presents a *Pullman* abstention question because a state court adjudication could very well eliminate the need altogether for a federal ruling on constitutional questions, or at the least, a state court adjudication could narrow the federal issues.

■ In their state court action plaintiffs' are challenging the regulations on purely state grounds. Central to the challenge there is the allegation that the boards do not have the authority to issue the regulations. Their argument is, in short, the boards acted *ultra vires*, therefore the regulations are invalid. If the state court agrees with the plaintiffs, this court need never hear the case on its merits. This result was at the heart of the rationale in *Pullman:* "[i]f there was no warrant in state law for the Commission's assumption of authority there is an end of the litigation; the constitutional issue does not arise." *Pullman*, 312 U.S. at 501, 61 S.Ct. at 645.

Even if the state court finds the boards did not exceed their authority, it would rule on plaintiffs' prayer for declaratory relief. Plaintiffs request the state court declare that a denial of a waiver constitutes an "adjudication" under Pennsylvania's Administrative Agency Law. It is important to emphasize these regulations have never been construed by any court. As noted in *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 747 (3d Cir.1982), "the mere presence of a 'potentially dispositive question of state law' ... has *never* been a sufficient basis *in itself* for declining federal jurisdiction under *Pullman.* This doctrine requires that the question of state law be unsettled." (Citation omitted.) The federal constitutional questions on due process would be shaped by the state court's position on the waiver issue. A federal adjudication on this issue before the state court rules on it would likely result in the type of advisory opinion the *Pennzoil* Court warned against.

The regulations at issue involve the health and well-being of Pennsylvania's citizens. Drug abuse and medical care are sensitive areas of state concern. The *Pullman* Court was faced with racial discrimination in employment. That Court made it clear that when a case "touches a sensitive area of social policy ... the federal courts ought not to enter unless no alternative to its adjudication is open. Such constitutional adjudication can be avoided if a definitive ruling on the state issue would terminate the controversy." *Pullman*, 312 U.S. at 498, 61 S.Ct. at 644. Plaintiffs here are actively pursuing the alternative to a federal court ruling; they have filed suit in state court.

Plaintiffs argue "*Pullman* abstention is neither required nor appropriate when undue prejudice, hardship, or delay will result. *Zwediler [Zwickler] v. Koota*, 389 U.S. 241 [88 S.Ct. 391, 19 L.Ed.2d 444] (1967)...." Plaintiffs' Reply Brief at 6. The record does not support a finding of prejudice, hardship or delay. The plaintiffs' fears that patients' health will be compromised is speculative at best; the state has sent and will continue to send letters to Pennsylvania's physicians explaining that decisions on their waiver applications are being deferred, and drug therapy may continue indefinitely. Defendant's Exhibits Nos. 6 and 7. The state court, in fact, concurs in this court's reading of the record.[2] Judge MacPhail states,

---

**2.** The parties had "stipulated that the record established in the Federal Court [at the hearing this court held on November 3, 1987] shall constitute the record before this Court." *Pennsylvania Medical Society v. Commonwealth of Penn-* *sylvania*, No. 2284 C.D.1987 and *Pennsylvania Osteopathic Medical Society v. Commonwealth of Pennsylvania*, 2386 C.D.1987 (November 12, 1987, opinion unreported) at 1.

"[t]he threatened harm that the Petitioners contend is present, simply does not appear to be substantiated by the record before us. *Pennsylvania Medical Society v. Commonwealth of Pennsylvania*, No. 2284 C.D.1987 and *Pennsylvania Osteopathic Medical Society v. Commonwealth of Pennsylvania*, 2386 C.D.1987 (November 12, 1987, opinion unreported) at 7.

*Conclusion*

Plaintiffs have raised viable questions as to the constitutionality of uninterpreted state regulations. They have raised state law issues in state court which if resolved in their favor would obviate the need for federal adjudication. In such circumstances the Supreme Court has *"required* District Courts, not merely sanctioned an exercise of their discretionary power, to stay their proceedings pending the submission of the state law question to state determination." *Louisiana P & L Co. v. Thibodaux City*, 360 U.S. 25, 28, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058 (1959) (emphasis added).

Thus, the court will abstain from further action in this case and will defer ruling on plaintiffs' motion for a preliminary injunction pending the outcome of the state court proceedings and an appropriate subsequent motion from plaintiffs. This court will retain jurisdiction over this action. *Pullman*, 312 U.S. at 501, 502, 61 S.Ct. at 645, 646.