In the Matter of the DELAWARE AND HUDSON RAILROAD CORPORATION, Petitioner, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, December 28, 1954.

*Alfred D. Kelly, Joseph Rosch* and *Paul F. Robinson* for petitioner.

*Edward D. Cohen, Joseph J. Doran* and *Harry T. O'Brien* for respondents.

HALPERN, J. The petitioner Delaware and Hudson Railroad Corporation seeks a review in a proceeding under article 78 of the Civil Practice Act of an order of the Public Service Commission denying it leave to discontinue the operation of certain passenger trains between Whitehall and Plattsburg.

The petitioner operates four trains northbound from Albany to Plattsburg, one early in the morning, one in the early afternoon, one in the evening (known as No. 5) and one during the night. The running time for the trip varies from four hours and twelve minutes on the fastest train to six hours and ten minutes on the slowest. The petitioner operates two southbound trains from Plattsburg to Albany, one early in the morning (known as No. 2) and one during the night.

The petitioner proposed to terminate the northbound evening train from Albany (No. 5) at Whitehall and it also proposed to discontinue the southbound morning train from Plattsburg (No. 2) and to originate it at Whitehall. These two trains would, under the petitioner's plan, continue to take care of the commuter traffic between Albany and Whitehall (a distance of 77.4 miles) but the operation between Whitehall and Plattsburg (a distance of 90 miles) would be discontinued.

The trains in question are being operated by the petitioner pursuant to an order of the Public Service Commission which

was granted in 1921, upon a finding that the trains were necessary in order to provide adequate service.

Under the existing service, passengers can travel from Plattsburg (or from any of the ten communities between Plattsburg and Whitehall) to Albany in the morning and return home the same day on the evening train. Under the petitioner's proposal, this will be impossible. Under the proposal, there will be no daytime train by which a passenger from Plattsburg, or from points between Plattsburg and Whitehall, will be able to travel to Albany, in a continuous trip. He will be able to get to Albany only by taking a train, not mentioned above, which runs from Plattsburg to Troy and then taking a bus to Albany, or by taking a local train which runs from Plattsburg to Whitehall and then waiting for over an hour in Whitehall for another local train to Albany. Apart from the inconvenience of waiting for the connection and making the transfer, the passenger could not get to Albany, by either route, until the close of the business day. He would have to stay overnight, transact his business during the morning of the next day, and then catch the early afternoon train to go back home.

The night trains are used for traffic to and from New York City, through connections with the New York Central Railroad. They are not suitable for the Plattsburg–Albany traffic since they arrive at their respective destinations in the middle of the night.

It is thus apparent that, if the petitioner's proposal were approved, the remaining passenger service would be highly unsatisfactory and clearly inadequate.

Nevertheless, the petitioner urged before the commission that the discontinuance should be permitted, for two reasons: (1) the trains were operated at a loss; (2) the amount of the patronage between Plattsburg and Whitehall was small. The commission rejected the application, on the ground that, taking into account all the relevant factors, public convenience and necessity required that the operation of trains No. 2 and No. 5 between Plattsburg and Albany be continued.

Under the elementary rule, we have no power to disturb the commission's decision unless it is found to be arbitrary, capricious or without support in substantial evidence. Upon the whole record, it seems clear to us that we can make no such finding in this case.

That the two trains are operated at a loss is unquestionable but this is true of the petitioner's entire passenger business. The passenger operations of the petitioner, in common with

those of all other Class I railroads, show a deficit. The petitioner's net operating income is produced by its freight operations. After deducting the loss on passenger business, the petitioner's net railway operating income in recent years has been running from seven million to eight million dollars per year. The net loss on the operation of trains No. 2 and No. 5 runs about $100,000 per year but over half of this loss would continue even if the operation between Whitehall and Plattsburg were discontinued so that the net loss attributable to the operation proposed to be discontinued is under $50,000 per year. This is not an unduly disproportionate loss to require the petitioner to bear, in the light of its total income, for the purpose of enabling it to discharge its obligation, under its charter and under the statutes, to render adequate passenger service in this area. The petitioner may not retain the lucrative freight business and disavow its obligation to provide adequate passenger service because it finds it unprofitable to do so. Of course, the operating loss was entitled to consideration by the commission in determining whether the discontinuance should be allowed and it is apparent from the hearing examiner's memorandum that due attention was given to it, but this factor was rightly subordinated to the consideration of public convenience and necessity, which the commission properly treated as being of paramount importance (*Alabama Comm.* v. *Southern Ry. Co.*, 341 U. S. 341, 353; *Matter of New York Central R. R. Co.* v. *Public Service Comm.*, 278 App. Div. 725; 74 C. J. S. Railroads, § 418).

The proof showed that patronage of the two trains between Plattsburg and Whitehall was light but the petitioner's characterization of it as negligible is unwarranted. The traffic was certainly not negligible in the light of the nature of the territory and the volume of the traffic which might reasonably be expected in such a territory, even at best. The average number of revenue passengers between the given points was 11.4 per trip southbound and 15.7 per trip northbound, or a total of 8,524 passengers for the year, based upon the figures for the year 1952, which was the poorest year to the date of the hearings. Furthermore, the figures as to the number of passengers do not give a true picture of the importance of the trains in question in serving the social, business, professional and institutional needs of the territory north of Whitehall. The usefulness of the service should be looked at qualitatively as well as quantitatively. The evening train out of Albany (No. 5) is regularly used to transport from Albany to Plattsburg, the prisoner patients who are transferred from various State prisons to the Dannemora

State Hospital for the criminal insane. Over 200 passengers per year are accounted for by this traffic which, in each instance, includes one prisoner and two guards. The prisoners are highly dangerous and, as the director of the hospital explained, it would be risky to keep them overnight in Albany, as the guards would have to do, if the operation of train No. 5 were discontinued north of Whitehall. The director also explained that automobiles could not safely be used to transport the prisoners, in some cases because of their violence or mental disturbance and, in other cases, because of the risk of escape. Prisoners sent to Clinton Prison also are transported on No. 5. The guards return to Albany on No. 2 the following morning; if this train were discontinued, they would be able to return only by the circuitous route described above.

The present schedule enables lawyers to go from Plattsburg to Albany to attend sessions of the State and Federal courts and to return the same day. Public officers and the officers of various business and philanthropic institutions use the service to attend official conferences in Albany and return the same day. The supervising teachers on the faculty of the State Teachers College at Plattsburg are able, by means of the two trains, in a one-day trip, to visit the student teachers who are assigned for practice teaching in the communities between Plattsburg and Whitehall. One-day trips from Plattsburg and nearby points are also arranged by the Red Cross, using the two trains, to take patients to the Veterans' Administration Hospital in Albany and to bring them back home.

The proof demonstrated that there are no alternate public transportation facilities which could take the place of the railroad service proposed to be discontinued. There is a bus line between Albany and Plattsburg but the run takes much longer than the train trip and the bus service cannot be used alone, or in combination with the remaining train service, to provide a one-day round trip such as that which is possible through the use of trains No. 2 and No. 5. Furthermore, the bus line runs on U. S. highway No. 9 which does not go through the towns between Whitehall and Plattsburg which are served by the petitioner's railroad line. There is no daily bus transportation for any of the communities between Whitehall and Plattsburg. Three of the towns are reached by buses operating on weekends but the remaining seven towns do not even have weekend bus service.

These factors are to be weighed against the financial loss suffered by the petitioner in determining whether public convenience and necessity require the continuance of the service.

The Legislature has entrusted the weighing process to the commission. '' [T]he commission has from the Legislature an inclusive grant of power to deal with intrastate railway passenger service (*Maltbie* v. *Long Beach Bus Co.,* * * * [297 N. Y. 723]; Public Service Law, § 49, subd. 2; §§ 51, 51-b * * *) ''. (*Matter of Public Service Comm.* v. *Norton,* 304 N. Y. 522, 529.)

In view of the nature of the need for the service, the absence of alternate public transportation facilities, and the small amount of the operating loss involved, when compared with the over-all profitable operations of the railroad, we cannot say that the commission's decision, requiring continuance of the service, was arbitrary, capricious or without support in substantial evidence.

The determination of the commission should be confirmed, with $50 costs.

FOSTER, P. J., BERGAN, COON and ZELLER, JJ., concur.

Determination of the commission confirmed, with $50 costs.