BENAVIDES, Circuit Judge,
dissenting:
The Burford abstention doctrine applies only “[w]here timely and adequate state-court review is available.” New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (NOPSI). Because the administrative scheme enacted by the State of Texas does not afford adequate judicial review of the Sierra Club’s federal claim, Burford is inapplicable. Therefore, I cannot agree with the majority’s conclusion that “[t]he Sierra Club failed to meet the first requirement of a preliminary injunction' — a substantial likelihood of success on the merits — because abstention appears so manifestly warranted under Burford.”
I.
When Congress enacted the Endangered Species Act, it explicitly provided that “any person may commence a civil suit on his own behalf to enjoin any person ... who is alleged to be in violation of this chapter or regulation issued under the authority thereof. ...” 16 U.S.C. § 1540(g)(1)(A). The appellants acknowledge that the district court had federal subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331 and the Endangered Species Act, 16 U.S.C. § 1540(c).[1] The Supreme Court has long recognized that federal courts have a “virtually unflagging” obligation to exercise the jurisdiction conferred- upon them by Congress. See, e.g., NOPSI, 491 U.S. at 359, 109 S.Ct. at 2513-14. Although this duty is not absolute, abstention is “the exception, not the rule.” Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1984). Specifically, the Supreme Court has recently emphasized that Burford abstention applies only in a “narrow range of circumstances.” Quackenbush v. Allstate Insurance Co.,— U.S. -, -, 116 S.Ct. 1712, 1725, 135 L.Ed.2d 1 (1996).
II.
The Supremacy Clause provides that federal law “shall be the supreme Law of the Land ..., any Thing in the Constitution or the laws of any State to the Contrary notwithstanding.” U.S. Const, art. VI, § 2. The Supremacy Clause makes federal law binding on the “Judges in every State.” Id. Pursuant to this constitutional provision, state courts are obligated to exercise judicial review of federal claims properly within their jurisdiction.
Abstention involves a federal court’s refusal to exercise jurisdiction it clearly possesses in favor of a state court’s exercise of jurisdic *799 tion. Thus, when a federal court abstains in a case in which a federal question is presented, state courts are obligated to exercise judicial review of that claim. If, for some reason, the state court does not have jurisdiction to review the federal claim, abstention is inappropriate. For example, this court has recognized that Burford abstention is inapplicable when a federal court has exclusive jurisdiction over the plaintiffs federal claim. See Evans v. Dale, 896 F.2d 975, 978-79 (5th Cir.1990).
The Supreme Court has required Burford abstention in only two eases. The first, Burford v. Sun Oil Co., 319 U.S. 315, 316-17, 63 S.Ct. 1098, 1098-99, 87 L.Ed. 1424 (1943), involved a challenge to the validity of an order of the Texas Railroad Commission. The plaintiffs asserted state law claims and argued that the Commission’s order violated their right to due process of law under the Constitution.[2] Id. at 317, 63 S.Ct. at 1098-99. The Court ultimately concluded that the federal court should stay its hand because federal court litigation “threatened the purpose of the complex administrative system that Texas had established.” Quackenbush, — U.S. at-, 116 S.Ct. at 1725 (citing Burford, 319 U.S. at 332, 63 S.Ct. at 1106-07).
Prior to reaching this conclusion, however, the Court noted that “judicial review of the Commission’s decisions in the state courts [was] expeditious and adequate.” Burford, 319 U.S. at 334, 63 S.Ct. at 1107. Essential to this conclusion, moreover, was the fact that the state courts were available to hear the plaintiffs’ federal due process claim. In this regard, the Court specifically noted that “if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here.” Id.
Similarly, in Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 343, 71 S.Ct. 762, 765, 95 L.Ed. 1002 (1951), the plaintiff challenged an order of the Alabama Public Service Commission under state law and argued that the order “amounted to a confiscation of its property in violation of the Due Process Clause of the Fourteenth Amendment.” [3] The Court held that because “adequate review of an administrative order based upon predominantly local factors [was] available to appellee, intervention of a federal court [was] not necessary for the protection of federal rights.” Id. at 349, 71 S.Ct. at 768. In emphasizing the adequacy of state-court review of the plaintiffs federal constitutional claim, the Court noted that the plaintiff “ha[d] not shown that the Alabama procedure for review of Commission orders [was] in any way inadequate to preserve for ultimate review in this Court any federal questions arising out of such orders.” Id.
*800 The majority does not explain its justification for finding that “adequate state-court review is available.” NOPSI, 491 U.S. at 361, 109 S.Ct. at 2514. One can only presume that it reaches this conclusion because “the Edwards Aquifer Authority is charged with protecting endangered species and is authorized to file civil suits in state district court for injunctive relief, and a separate entity, the Texas Natural Resource Conservation Commission, is authorized to file suit for an order of mandamus against the Authority to compel it to perform its duties.” Nonetheless, the majority concedes that “[i]t is unclear ... whether [the Edwards Aquifer Act] gives a private cause of action or confers standing on an environmental group like the Sierra Club.”
Similarly, the appellants argue that state remedies “afford timely and adequate review of the Authority’s protection of endangered species.” This contention is debatable because the Act only authorizes, but does not require, the Authority and the Texas Natural Resource Conservation Commission to protect endangered species. In any event, the appellants’ argument misses the point.
While it was important that the state administrative schemes in Bwrford and Alabama Public Service Commission provided adequate judicial review of the orders of the state commissions, that was only because the plaintiffs were challenging orders of the commissions, who were defendants in those cases. Adequate review of the commissions’ orders in those cases was a necessary, albeit insufficient, justification for applying Bwrford abstention. Indeed, the Court relied on the fact that there was “adequate state-court review” of the plaintiffs’ federal claims.
Thus, even assuming that Texas’s administrative scheme provides adequate judicial review of the activity of the Authority, this does not justify this court’s exercise of Bur-ford abstention. First, the adequacy of judicial review of the Authority’s action is irrelevant in this case because the Sierra Club is not challenging an order of the Authority. See note 3 and accompanying text. Second, adequate review of the Authority’s decisions does not change the fact that there is no judicial review of the Sierra Club’s federal claim.
Adequate state-court review of a plaintiffs federal claim is a necessary prerequisite to Bwrford abstention for two reasons. First, as noted, the Supremacy Clause requires state courts to enforce federal laws. It would defeat the purposes underlying that protection for federal courts to abstain in cases raising federal claims where the state courts do not provide adequate judicial review of those claims. Second, adequate state-court review of a plaintiffs federal claims is necessary to ensure that the Supreme Court is able to maintain jurisdiction over those claims should the state courts fail to provide sufficient protection for federal rights.
III.
Neither the majority nor the appellants seriously dispute the Sierra Club’s contention that it cannot bring an Endangered Species Act claim within the auspices of the Edwards Aquifer Act.[4] Instead, the app.ellants claim that the “Sierra Club is free to bring its ESA claims in the State courts of Texas.... ” Assuming this is true, however, the appellants’ argument ignores the rationale justifying Bwrford abstention in the first place.
The Supreme Court has explained that “Bwrford is concerned with protecting complex state administrative processes from undue federal interference.” NOPSI, 491 U.S. at 362, 109 S.Ct. at 2515. Therefore, in an appropriate case, a federal court must defer to the state court’s administrative scheme. In the absence of adequate review of a plaintiffs federal claim within that scheme, however, deference to state courts does not further the policies justifying Burford abstention.[5]
*801 To find authority for the proposition that “adequate state-court review” must occur within the state administrative scheme, one need look no further than Burford itself. There, the Court explained the need for abstaining in favor of a uniform and comprehensive scheme of state-court review:
To prevent the confusion of multiple review of the same general issues, the legislature provided for concentration of all direct review of the Commission’s orders in the State district courts of Travis County. The Texas courts have authoritatively declared the purpose of this restriction: If an order of the commission, lawful on its face, can be collaterally attacked in the various courts and counties of the state on grounds such as those urged in the instant case, interminable confusion would result____ Concentration of judicial supervision of Railroad Commission orders permits the state courts, like the Railroad Commission itself, to acquire a specialized knowledge which is useful in shaping the policy of regulation of the ever-changing demands in this field____ The very “confusion” which the Texas legislature and the [State] Supreme Court feared might result from review by many state courts of the Railroad Commission’s orders has resulted from the exercise of federal equity jurisdiction.
319 U.S. at 327, 63 S.Ct. at 1104 (internal quotations and citations omitted). See also Alabama Pub. Serv. Comm’n, 341 U.S. at 348, 71 S.Ct. at 767-68 (“Statutory appeal from an order of the Commission is an integral part of the regulatory process under the Alabama Code. Appeals, concentrated in one circuit court, are supervisory in character.”); NOPSI, 491 U.S. at 374,109 S.Ct. at 2521-22 (Rehnquist, C.J., concurring) (agreeing with the Court that abstention was inappropriate, but noting that he “would not foreclose the possibility of Burford abstention in a case ... [where] the State consolidated review of the orders of local ratemaking bodies in a specialized state court with power to hear a federal preemption claim”).
The Sierra Club’s Endangered Species Act claim cannot be raised within the scheme that Texas has established to regulate Edwards Aquifer water. In this important sense, then, the state’s administrative scheme is not uniform and comprehensive in the same manner the Supreme Court has considered dispositive. In fact, “the very confusion” the Burford doctrine seeks to avoid would result “from review by many state courts” of claims brought under the Endangered Species Act. Burford, 319 U.S. at 327, 63 S.Ct. at 1104.
IV.
The appellants’ abstention argument amounts to nothing more than a plea for this court to abrogate its duty to enforce a federal right granted to private citizens by Congress because doing so would potentially conflict with important local interests.[6] The Supreme Court has recognized, however, that Burford “does not require abstention whenever there exists [a state administrative process], or even in all cases where there is a ‘potential for conflict’ with state regulatory *802 law or policy.” NOPSI, 491 U.S. at 362, 109 S.Ct. at 2515 (quoting Colorado River Water Conservation Dist., 424 U.S. at 815-16, 96 S.Ct. at 1245-46). More important, the appellants’ contention is flatly inconsistent with a governmental system in which federal law is supreme.
Because the Edwards Aquifer Act does not provide adequate judicial review of the Sierra Club’s federal claim, I would find the Bur-ford abstention doctrine inapplicable and would reach the arguments raised by the appellants with respect to the extraordinary and extensive order appealed from herein. For the foregoing reasons, I respectfully dissent.

. The Endangered Species Act provides that "[t]he several district courts of the United States ... shall have jurisdiction over any actions arising under this chapter." 16 U.S.C. § 1540(c).

. The Burford Court repeatedly emphasized that state law issues were predominant and that the federal constitutional claim bordered on the frivolous. See, e.g., id. at 325, 63 S.Ct. at 1103 ("While the constitutional power of the Commission to enforce [the challenged rule] or to make exceptions to it is seldom seriously challenged, the validity of particular orders from the standpoint of statutory interpretation may present a serious problem, and a substantial number of such cases have been disposed of by the Texas courts which alone have the power to give definite answers to the questions of State law posed in those proceedings” (citations omitted)); id. at 328, 63 S.Ct. at 1104 ("The federal court has been called upon constantly to determine whether the Railroad Commission has acted within the scope of statutory authority, while the important constitutional issues have, as the federal court has repeatedly said, been fairly well settled from the beginning"). It is undisputed, of course, that the Sierra Club has asserted no state law claims against the appellants. This fact alone distinguishes the instant case from Burford and suggests that abstention is not appropriate. Cf. NOPSI, 491 U.S. at 361, 109 S.Ct. at 2514-15 (reversing this court’s application of Burford abstention and noting that the case did not involve a state-law claim); Wilson v. Valley Elec. Membership Corp., 8 F.3d 311, 314 (5th Cir.1993) (holding that "whether the cause of action arises under federal or state law” is a relevant factor in assessing the applicability of Burford abstention).

. The Court noted that its concern was "limited to the propriety of a federal court injunction enjoining enforcement of a state regulatory order." Id. at 346, 63 S.Ct. at 1113. The instant case is distinguishable from both Burford and Alabama Public Service Commission because it does not involve an action for injunctive relief against a state regulatory commission. For this reason, moreover, the Court's concern about federal court interference with state regulatory orders is not implicated by the Sierra Club’s lawsuit against the appellants.

. The majority concedes that "[t]he Sierra Club may be correct, since, unlike the Endangered Species Act, there is no express private citizen cause of action created in the Edwards Aquifer Act for entities such as environmental groups to seek judicial redress for statutory violations.” (citation omitted).

. See McNeese v. Board of Educ. Community Unit Sch. Dist. 187, 373 U.S. 668, 674-75, 83 S.Ct. *801 1433, 1437-38, 10 L.Ed.2d 622 (1963) (declining to apply Burford abstention in a school desegregation case brought pursuant to section 1983 because it was not clear that state law provided the plaintiffs “with an administrative remedy sufficiently adequate to preclude prior resort to a federal court for protection of their federal rights”).

. Indeed, Congress recognized that enforcement of the Endangered Species Act might conflict with important local interests. See 16 U.S.C. § 1535. Therefore, Congress declared that “[i]n carrying out the program authorized by [the ESA], the Secretary [of the Interior] shall cooperate to the maximum extent practicable with the States." Id. § 1535(a). In this regard, Congress authorized the Secretary "to enter into a cooperative agreement ... with any State which establishes and maintains an adequate and active program for the conservation of endangered species and threatened species.” Id. § 1535(c).
Thus, the Endangered Species Act establishes an avenue whereby states can minimize federal interference. Nonetheless, the appellants do not claim to have followed the procedures outlined in the Act for entering into a cooperative agreement with the federal government. See id. § 1535(c)(1). Nor do the appellants claim to have established an "adequate and active program for the conservation of endangered species” under the Act. See id. These circumstances render the majority's deference to the state's administrative scheme particularly unwarranted.