**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KATHERINE BLUMENKRON;
DAVID BLUMENKRON;
SPRINGVILLE INVESTORS, LLC,
a limited liability company,

      *Plaintiffs-Appellants*,
 and

ROBERT ZAHLER,

      *Plaintiff*,
 v.

MULTNOMAH COUNTY;
ANYELEY HALLOVA, ROBIN
MCARTHUR, CATHERINE
MORROW, KATIE PEARMINE,
GERARDO SANDOVAL, STUART
WARREN, all in their official
capacities as members of the Land
Conservation and Development
Commission; SAM CHASE,
SHIRLEY CRADDICK, CRAIG
DIRKSEN, JUAN CARLOS
GONZALEZ, CHRISTINE LEWIS,
LYNN PETERSON, BOB STACEY,
all in their official capacities as Metro

No. 21-35987

D.C. No.3:20-cv-
00422-HZ

OPINION

councilors,

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, Chief District Judge, Presiding

Argued and Submitted February 8, 2023
Portland, Oregon

Filed February 2, 2024

Before: Mary H. Murguia, Chief Judge, and Danielle J.
Forrest and Jennifer Sung, Circuit Judges.

Opinion by Judge Sung

## SUMMARY[*]

### *Burford* Abstention

The panel affirmed the district court's dismissal of plaintiffs' facial and as-applied constitutional challenges to the designation of certain land in Multnomah County, Oregon, as "rural reserves" under the Oregon Land Reserves Statute.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Plaintiffs alleged, in part, that the Land Reserves Statute and regulations facially violate the Equal Protection and Due Process Clauses of the federal constitution and that defendants' rural reserve designations violated plaintiffs' federal procedural due process, substantive due process, and equal protection rights (the "as-applied claims"). The district court dismissed plaintiffs' facial constitutional claims for failure to state a claim and abstained from exercising jurisdiction over plaintiffs' as-applied constitutional claims under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), because exercising federal jurisdiction would interfere with Oregon's authority to manage its own land use scheme.

*Burford* abstention is designed to protect complex state administrative processes from undue federal interference. Application of *Burford* abstention requires: (1) that the state has chosen to concentrate suits challenging the involved agency's actions in a particular court; (2) that the federal issues cannot be separated easily from complicated state law issues over which the state courts might have special competence; and (3) that federal review might disrupt state efforts to establish a coherent policy.

The panel held that the *Burford* abstention requirements were met for each of the as-applied claims. First, the Oregon legislature concentrated review of reserve designation orders by the Oregon Land Conservation and Development Commission in a state court forum, and the state court review was, in all material respects, identical to the state court review of administrative orders deemed adequate in *Alabama Public Service Commission v. Southern Railway Co.*, 341 U.S. 341 (1951). Second, plaintiffs' constitutional claims were inextricably intertwined with complex state law issues regarding the proper interpretation and application of

the Land Reserves Statute's urban and rural designation factors, as well as the statutorily prescribed, intergovernmental process for making such designations. Third, a change in the rural designation for plaintiffs' land would disrupt the State's attempt to ensure uniformity in the treatment of an essentially local problem.

Having determined that the requirements for *Burford* abstention were met for each of plaintiffs' as-applied claims, the panel next concluded that the district court did not abuse its discretion by abstaining from exercising jurisdiction over the claims in their entirety, including plaintiffs' claims for damages, which were incidental to the equitable claims for declaratory and injunctive relief.

Finally, the panel concluded that plaintiffs had abandoned their facial constitutional claims on appeal and therefore affirmed the district court's dismissal of plaintiffs' facial constitutional claims for failure to state a claim as a matter of law.

## COUNSEL

Christopher James (argued), The James Law Group LLC, Portland, Oregon, for Plaintiffs-Appellants.

Roger A. Alfred (argued), Office of Metro Attorney, Portland, Oregon; Christopher A. Gilmore (argued), Multnomah County Attorney's Office, Portland, Oregon; Nathan A.S. Sykes, Deputy Assistant Chief Counsel, Metro Office of General Counsel; Patrick M. Ebbett, Assistant Attorney General, Oregon Attorney General's Office, Salem, Oregon; for Defendants-Appellees.

**OPINION**

SUNG, Circuit Judge:

Plaintiffs Katherine Blumenkron, David Blumenkron, and Springville Investors, LLC, filed this action to challenge the designation of certain land in Multnomah County, Oregon, as "rural reserves" under the Oregon Land Reserves Statute. Defendants are Multnomah County, councilors of the Metro Regional Government, and members of the Oregon Land Conservation and Development Commission. Plaintiffs brought this action under 42 U.S.C. § 1983, alleging federal and state constitutional claims and seeking a variety of injunctive and declaratory relief and damages.

The district court dismissed Plaintiffs' facial constitutional claims for failure to state a claim; abstained from exercising jurisdiction over Plaintiffs' as-applied constitutional claims under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), because exercising federal jurisdiction "would interfere with Oregon's authority to manage its own land use scheme"; and declined to exercise supplemental jurisdiction over the remaining state-law claims.

We affirm the dismissal of all claims. We agree with the district court that the requirements for *Burford* abstention are met for each of Plaintiffs' as-applied claims. We also conclude that the district court appropriately dismissed Plaintiffs' damages claims under *Burford.* Although the comity principles that underlie abstention doctrines generally permit dismissal only of claims for equitable relief, when the requirements for abstention are met, a federal court may dismiss damages claims that are only incidental to equitable claims.

## The Oregon Land Reserves Statute

Since 1973, Oregon law has required local governments to make land use plans that comply with statewide policy goals, which include preserving farm and forest land and preventing the uncontrolled urbanization of rural areas. *See, e.g.*, *1000 Friends of Or. v. Land Conservation & Dev. Comm'n*, 724 P.2d 268, 273–76 (Or. 1986). In 2007, the state legislature enacted the Land Reserves Statute, Or. Rev. Stat. §§ 195.137–145, to "facilitate long-range planning" by local governments and provide "greater certainty" to commerce, industry, private landowners, and providers of public services. Or. Rev. Stat. § 195.139. *See also Barkers Five, LLC v. Land Conservation & Dev. Comm'n* ("*Barkers Five I*"), 323 P.3d 368 (Or. Ct. App. 2014).

Under the Land Reserves Statute, Metro, a regional government, is responsible for establishing the "urban growth boundary" in the Portland metropolitan area. Or. Rev. Stat. §§ 197.015(14), 197.299. The statute also authorizes local governments in the Portland metropolitan area, including Multnomah County and Metro, to evaluate land that is currently outside the urban growth boundary and designate it as either "urban reserve" or "rural reserve." Or. Rev. Stat. §§ 195.141, 195.143, 195.145; Or. Admin. R. 660-027-0030, -0040, -0080. Urban reserves are prioritized for development and eventual inclusion in the urban growth boundary. Or. Rev. Stat. § 195.137(2). Rural reserves are protected "to provide long-term protection for agriculture, forestry or important natural landscape features." Or. Rev. Stat. § 195.137(1). Local governments may not designate urban reserves in a county without also designating rural reserves in that county. Or. Rev. Stat. § 195.143(3).

To protect rural reserve land, the statute bars local governments from including land designated as rural reserve within the urban growth boundary for a decades-long planning period. *See* Or. Rev. Stat. §§ 195.141(2); 195.145(4); Or. Admin. R. 660-027-0040(4); *Barkers Five, LLC v. Land Conservation & Dev. Comm'n* ("*Barkers Five II*"), 451 P.3d 627, 630 n.1 (2019). Additionally, local governments may not "amend comprehensive plan provisions or land use regulations to allow uses that were not allowed, or smaller lots or parcels than were allowed, at the time" the land was designated "as rural reserves unless and until the reserves are re-designated, consistent with [the applicable regulations], as land other than rural reserves." Or. Admin. R. 660-027-0070(3)–(4).

When making urban or rural reserve designations, local governments must consider the factors set forth in the Land Reserves Statute and administrative rules. Or. Rev. Stat. §§ 195.145(6), 195.141(3); Or. Admin. R. 660-027-0050, -0060. For rural reserves, local governments must consider, for example, whether the area can sustain long-term agricultural operations—taking into account land use patterns and the sufficiency of agricultural infrastructure—and whether the land "[h]as suitable soils and available water where needed." Or. Rev. Stat. §195.141(3). Additionally, they must consider whether the land has "suitable soils where needed to sustain long-term agricultural or forestry operations"; has sufficient "agricultural or forestry infrastructure in the area"; or is "necessary to protect water quality or water quantity, such as streams, wetlands and riparian areas." Or. Admin. R. 660-027-0060.

For urban reserves, local governments must consider, for example, whether the land "[c]an be developed at urban densities in a way that makes efficient use of existing and

future public infrastructure investments"; "[c]an be served by public schools and other urban-level public facilities and services efficiently and cost-effectively by appropriate and financially capable service providers"; "[c]an be designed to be walkable and served by a well-connected system of streets by appropriate service providers"; and "[i]ncludes sufficient land suitable for a range of housing types." Or. Rev. Stat. § 195.145(6). *See also* Or. Admin. R. 660-027-0050.

To designate land as rural or urban reserve, the local governments must engage in a multi-step, cooperative process prescribed by the Land Reserves Statute and administrative rules. Or. Rev. Stat. §§ 195.141, 195.143, 195.145; Or. Admin. R. 660-027-0030. Under this process, Metro designates urban reserves and the three Portland-area counties (Multnomah, Washington, and Clackamas) designate rural reserves. Or. Admin. R. 660-027-0020. However, Metro and each affected county must consider the urban and rural reserve factors "concurrently and in coordination with one another." Or. Admin. R. 660-027-0040(10). Further, Metro and the counties cannot make urban or rural designations without an intergovernmental agreement between Metro and the county. Or. Admin. R. 660-027-0030, -0040. After finalizing intergovernmental agreements and maps of reserve areas, Metro and each affected county must "adopt a single, joint set of findings of fact, statements of reasons and conclusions explaining why areas were chosen as urban or rural reserves." Or. Admin. R. 660-027-0040(10).

The Oregon Land Conservation and Development Commission ("Commission") oversees various land-use decisions. The Commission has two roles in the reserve designation process. First, the Commission has authority to

enact rules regarding the process and criteria for designating reserves. Or. Rev. Stat. §§ 195.141(5), 195.145(8). Second, the Commission reviews reserve designations submitted by local governments. Or. Rev. Stat § 197.626(1)(c), (f); Or. Admin. R. 660-027-0080(2). When reviewing submitted reserve designations, the Commission determines whether the designations (1) comply with statewide planning goals, (2) comply with reserve designation standards, and (3) are supported by substantial evidence. Or. Rev. Stat. § 197.633(3); Or. Admin. R. 660-027-0080(4). The Commission must issue a final order regarding its decision whether to approve a designation. Or. Rev. Stat. § 197.626(2); *Barkers Five I*, 323 P.3d at 374.

The Commission's final order regarding a reserve designation is subject to judicial review by the Oregon Court of Appeals. Or. Rev. Stat. § 197.651. The Court of Appeals must limit judicial review to the administrative record and "[m]ay not substitute its judgment for that of the Land Conservation and Development Commission as to an issue of fact." Or. Rev. Stat. § 197.651(9). The Court of Appeals may affirm, reverse, or remand the Commission's final order. Or. Rev. Stat. § 197.651(10).

### Factual Background and Prior Proceedings

Plaintiffs own properties that, together, comprise 76 acres of land located in Multnomah County.[1] Plaintiffs' properties are within a large study area referred to as Area 7. In December 2009, the Multnomah County Board of Commissioners unanimously adopted a resolution

---

[1] "Because this is an appeal from an order [granting] a motion to dismiss, we assume the truth of the well-pleaded facts alleged in the complaint." *See Pettibone v. Russell*, 59 F.4th 449, 450–51 (9th Cir. 2023).

recommending that all land within Area 7 remain undesignated—that is, not designated as either urban reserve or rural reserve. Thereafter, an intergovernmental steering committee established a regional numbering system that divided Area 7 into three areas, 9A, 9B, and 9C. Plaintiffs' property is within Area 9B.

In the following months, Metro and Multnomah County prepared a proposed intergovernmental agreement that would leave Areas 9A and 9B undesignated. Various individuals, including some Portland officials, sent Metro or the County letters advocating for a different outcome—some favoring an urban reserve designation, and others favoring a rural reserve designation. Metro and Multnomah County held public hearings regarding the proposed agreement. Various interested parties, including Plaintiffs, testified at the Multnomah County public hearing. Plaintiffs testified and submitted evidence in favor of designating Area 9B as an urban reserve. A Portland planning officer testified in favor of designating Areas 9A and 9B as rural reserves.

After the public hearing, Multnomah County Commissioner Judy Shiprack moved to amend the proposed intergovernmental agreement to designate Areas 9A and 9B as rural reserves. Two commissioners opposed the amendment, contending that the factors did not strongly support a rural reserve designation. One commissioner explained that she favored the amendment in part because she received hundreds of communications from constituents that overwhelmingly favored designating those areas as rural reserves. Ultimately, the county commissioners, by a vote of 3 to 2, adopted an intergovernmental agreement with Metro that designated Areas 9A and 9B as rural reserves. Soon after, Metro also voted to amend the proposed intergovernmental agreement to make it consistent with the

amended agreement adopted by the County, by a vote of 5 to 2. In May 2010, the County adopted Ordinance 1161 designating Areas 9A and 9B as rural reserves and setting forth the County's reasons for adopting the designations. Metro conducted another public hearing on the designations and then adopted Ordinance No. 10-1238A, approving and adopting the same designations.

Metro and the three Portland-area counties provided the Land Conservation and Development Commission with a "consolidated submittal" of proposed designations, which included the designations of Areas 9A and 9B as rural reserves. In October 2010, the Commission held a hearing on the consolidated submittal. At the hearing, the Commission heard extensively from Metro and the three counties. Other individuals, including Plaintiffs, were given brief opportunities to explain their objections and offer evidence. The Commission generally approved the proposed designations, except it remanded two areas (not at issue here) to Metro and Washington County for further consideration. In May 2011, Metro and the counties resubmitted their proposed designations to the Commission, and the Commission held another hearing to consider objections to those designations. The Commission eventually issued a 156-page order of compliance acknowledgment for the entire submittal ("First Compliance Acknowledgement Order").[2]

Plaintiffs and multiple other parties filed a petition for review of the First Compliance Acknowledgment Order in

---

[2] Under Oregon law, the Commission may, at the request of a local government, issue an order granting, denying, or continuing "acknowledgement" that "comprehensive plan and land use regulations" comply with approved goals. Or. Rev. Stat. § 197.251.

the Oregon Court of Appeals, raising 25 assignments of error. *See Barkers Five I*, 323 P.3d at 374–75. The Oregon Court of Appeals rejected most of the petitioners' contentions, including their "overarching contention" that the Commission "erroneously understood the designation of urban and rural reserves to be a 'political' decision materially unconstrained by legal requirements." *Id.* at 404. The court also affirmed the Commission's conclusion that, under the Land Reserves Statute, "if Metro and the counties properly consider and apply the [reserve] factors, the decision whether to designate particular land as urban reserves or rural reserves or to leave it undesignated is left to the local government." *Id.* at 391. The court did find that the Commission erred in four respects, but none of those errors concerned Plaintiffs' challenges to the rural reserve designation of Area 9B. *Id.* at 375.

After the Oregon Court of Appeals reversed and remanded the First Acknowledgement Order, Multnomah County held more public hearings regarding the reserve designations. Plaintiffs submitted testimony and new evidence of changed circumstances affecting Area 9B. Both Multnomah County and Metro eventually adopted ordinances that reaffirmed and adopted all of Multnomah County's previous reserves designations.

Metro filed another joint submittal with the Commission. Plaintiffs objected to their properties' rural reserve designation on multiple grounds, including assertions of bias, political interferences, failure to apply the required factors and criteria, failure to follow the applicable rules, and violation of Plaintiffs' federal due process and equal protection rights. The Commission held another public hearing at which testimony from objecting parties, including Plaintiffs, was limited to ten minutes. On May 16, 2018, the

Commission issued a second compliance acknowledgement order ("Second Compliance Acknowledgment Order") rejecting every objection (including Plaintiffs') and approving the submittal.

On October 9, 2019, the Oregon Court of Appeals affirmed the Second Compliance Acknowledgment Order. *See Barkers Five II*, 451 P.3d at 627. The court noted that the assignments of errors raised "general contentions that much of the decision-making involved in the reserves-designation process was impermissibly political," but rejected them without discussion. *Id.* at 630. The court also discussed and rejected Plaintiffs' argument that Multnomah County should have reconsidered, on remand, its designation of Area 9B. *Id.* at 636-37. The court then noted that it had "considered each of the additional arguments that petitioners make on judicial review" and rejected them "without discussion." *Id.* at 637.

In 2012, while *Barkers Five I* was pending in the Oregon Court of Appeals, Plaintiffs filed a federal lawsuit challenging the rural reserve designation for Area 9B. After the Oregon Court of Appeals reversed and remanded the Commission's First Compliance Acknowledgment Order in *Barkers Five I*, the federal district court dismissed Plaintiffs' claims as unripe but granted Plaintiffs leave to renew their claims after a second final decision regarding the reserve designations was issued.

After the Oregon Court of Appeals affirmed the Commission's Second Compliance Acknowledgment Order, Plaintiffs filed the complaint in this case. Plaintiffs asserted that the Land Reserves Statute and regulations facially violate the Equal Protection and Due Process clauses of the federal constitution, and that Defendants' designation of

Area 9B as rural reserve violated their federal procedural due process, substantive due process, and equal protection rights (the "as-applied claims"). Plaintiffs' complaint also includes related state law claims against Metro and Multnomah County.

The district court abstained from exercising jurisdiction over Plaintiffs' as-applied claims under *Burford*. The court dismissed Plaintiffs' federal facial constitutional claims for failure to state claim. And, having dismissed all claims over which it had original jurisdiction, the court declined to exercise supplemental jurisdiction over the remaining state law claims. Plaintiffs timely appealed.

## Discussion

### I.  *Burford* Abstention

Abstention is well recognized as an "extraordinary and narrow exception" to the general rule that a federal court should adjudicate cases otherwise properly before it. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citation omitted).

*Burford* abstention is designed to "protect[] complex state administrative processes from undue federal interference." *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 671 (9th Cir. 2004) (quoting *Tucker v. First Md. Sav. & Loan, Inc.*, 942 F.2d 1401, 1404 (9th Cir. 1991)).

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy

problems of substantial public import whose importance transcends the result in the case at bar"; or (2) where the "exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of New Orleans* ("*NOPSI*"), 491 U.S. 350, 360 (1989) (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 814).

In the Ninth Circuit, application of *Burford* abstention requires: (1) "that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court;" (2) "that federal issues could not be separated easily from complicated state law issues with respect to which the state courts might have special competence;" and (3) "that federal review might disrupt state efforts to establish a coherent policy." *United States v. Morros*, 268 F.3d 695, 705 (9th Cir. 2001) (quoting *Knudsen Corp. v. Nev. State Dairy Comm'n*, 676 F.2d 374, 377 (9th Cir. 1982)).

We review de novo whether the requirements for *Burford* abstention have been met. *City of Tucson v. U.S. W. Commc'ns, Inc.*, 284 F.3d 1128, 1132 (9th Cir. 2002). When those requirements have been met, we review the district court's decision to abstain for abuse of discretion. *Id.*

## A.  *Burford* Abstention Requirements

For the reasons explained below, we agree with the district court that the *Burford* abstention requirements have been met for each of Plaintiffs' as-applied claims.

### 1.  State Court Review

Under the Land Reserves Statute, reserve designations made by Metro and a county are first subject to review by the Commission. Or. Rev. Stat. § 197.626(1). Then, the Commission's orders are subject to review by the Oregon Court of Appeals. Or. Rev. Stat. § 197.651.

> The Court of Appeals may affirm, reverse or remand an order [of the Commission]. The Court of Appeals shall reverse or remand the order only if the court finds the order is:
>
> (a) Unlawful in substance or procedure. However, error in procedure is not cause for reversal or remand unless the Court of Appeals determines that substantial rights of the petitioner were prejudiced.
>
> (b) Unconstitutional.
>
> (c) Not supported by substantial evidence in the whole record as to facts found by the [C]ommission.

Or. Rev. Stat. § 197.651(10). The Court of Appeals must "issue a final order on the petition for judicial review with the greatest possible expediency." Or. Rev. Stat. § 197.651(11). The Court of Appeals' decision is also subject to review by the Oregon Supreme Court. *See* Or. Rev. Stat. 197.651(12).

It is undisputed that the Oregon legislature has concentrated review of Commission orders in a state court forum, and that the state court's review is timely. Plaintiffs contend only that the state court's review is inadequate. We disagree.

The Supreme Court considered whether comparable state court review was "adequate" for *Burford* abstention in *Alabama Public Service Commission v. Southern Railway Co.* ("*Alabama PSC*"), 341 U.S. 341 (1951). In that case, the Alabama Public Service Commission denied a railway's application for a permit to discontinue passenger rail service, and the railway brought an action in federal district court seeking to enjoin enforcement of the commission's administrative order. *Id.* at 343. The district court granted the injunction, *id.*, but the Supreme Court reversed, instructing that the federal district court should have abstained from exercising jurisdiction because "adequate state court review of an administrative order based upon predominantly local factors" was available. *Id.* at 349–50 (citing *Burford*). In so holding, the Court noted that Alabama had "[n]ot only" created the Public Service Commission to review a proposed discontinuation of rail service, "but it ha[d] also provided for appeal from any final order" of the commission to a state circuit court "as a matter of right." *Id.* at 348. Additionally, the state circuit court, "after a hearing on the record certified by the [c]ommission," could "set aside any [c]ommission order found to be contrary to the substantial weight of the evidence or erroneous as a matter of law," and the circuit court's decision could be appealed to the Alabama Supreme Court. *Id.* (citations omitted).

Oregon has provided for state court review of the Commission's orders that is, in all material respects, identical to the state court review of the commission orders deemed adequate in *Alabama PSC.* In this case, Plaintiffs argue that the state court review is inadequate because it is limited to the administrative record. The Supreme Court, however, rejected that argument in *Alabama PSC*. *Id.* at 348. As the Court explained then, the fact that review in the state

courts is limited to the record taken before the commission "presents no constitutional infirmity." *Id.* "[W]hatever the scope of review of [c]omission findings when an alleged denial of constitutional rights is in issue," there is "no right to relitigate factual questions on the ground that constitutional rights are involved." *Id.* (citations omitted).

Plaintiffs also generally argue that the state court review of Commission orders is inadequate because it is not equal to the review approved in *Burford*, because that regulatory scheme at issue there allowed the state court to, at least on occasion, exercise "as much power" as the Texas Railroad Commission "to determine particular cases" after a "trial de novo." 319 U.S. at 326. But, while the Supreme Court in *Burford* held that de novo review by a state court is adequate for abstention, it did not hold that such review is *required* for abstention. *See id.* And, as discussed above, the Court made clear in *Alabama PSC* that state court review that is limited to the administrative record is also adequate.

### 2.  Separability of federal and state law issues

Plaintiffs do not meaningfully dispute that the underlying state law issues are complicated and within the special competence of the Oregon Court of Appeals. Rather, Plaintiffs argue that *Burford* abstention does not apply because their federal claims can be easily separated from those state law issues. *Burford* abstention is inappropriate where "the federal questions . . . can readily be identified and reserved without colliding with what are essentially state claims." *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 842 (9th Cir. 1979) (quoting *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1096 (9th Cir. 1976)). Accordingly, we consider whether Plaintiffs' federal claims can be easily separated from the

state law issues on a claim-specific basis. But, because Plaintiffs' arguments conflate their as-applied equal protection and substantive due process claims, we also consider those claims together.

### a. As-applied equal protection and substantive due process claims

According to Plaintiffs, "[a]t the heart of [their] as-applied federal substantive due process and equal protection claims [are] Plaintiffs' allegations that Multnomah County and Metro, *notwithstanding* their consideration of the results of their own application and analysis of the reserves factors with respect to the designation of Area 9B, arbitrarily and irrationally chose to designate Area 9B and Plaintiffs' property as a rural reserve for reasons of bias, caprice, and political considerations . . . ." Further, Plaintiffs claim that Defendants treated Area 9B "differently than other similarly situated properties . . . without a rational basis for that different treatment."

These as-applied claims are inextricably intertwined with complex state law issues regarding the proper interpretation and application of the Land Reserves Statute's urban and rural designation factors, as well as the statutorily prescribed, intergovernmental process for making such designations. For example, to resolve Plaintiffs' claim that Defendants treated Plaintiffs' properties differently from similarly situated properties, the court would first need to determine whether Area 9B was in fact similarly situated to other areas designated as urban reserves. And, to make that threshold determination, the court would need to interpret and apply the reserve factors prescribed by state law.

Similarly, to resolve Plaintiffs' claim that Defendants designated Area 9B because of improper motives instead of

the applicable factors and record evidence, the court would first need to determine whether the Defendants' stated reasons for the rural reserve designation are consistent with state law and supported by the record. Plaintiffs assert that the court could determine whether Defendants' stated reasons for designating Area 9B as rural reserve are pretext for improper motives without evaluating whether Defendants "failed to take into consideration or properly weigh relevant state law factors." Plaintiffs, however, ignore that a court determines whether a stated reason is pretext by evaluating its legal and factual validity.

### b. As-applied procedural due process claims

To prevail on the as-applied procedural due process claims, Plaintiffs "must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of that interest by the government, [and] (3) a lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

We agree with Plaintiffs that, typically, federal courts do not need to resolve complex state law issues to determine whether a particular process was constitutionally deficient. In this case, however, Plaintiffs' allegations in support of their procedural due process claims are intertwined with issues regarding the proper interpretation and application of the Land Reserves Statute and the accompanying regulations. For example, in the context of their procedural due process claims against Multnomah County and the Commission, Plaintiffs allege that these Defendants failed to give Plaintiffs "fair consideration of the factors under SB 1011" or "fair consideration of the applicable statutory and regulatory factors." And, in the context of their procedural

due process claim against Metro, Plaintiffs allege that "Metro failed to (1) obtain timely reports regarding the availability of services to Area 9B and failed to consider that information once it was available; (2) properly investigate the location and nature of landscape features and failed to consider such information as applied to Area 9B when presented with it; and (3) consider such evidence and others in part because it would upset political bargaining." Similarly, Plaintiffs allege the Commission "did not provide an impartial review" and "did not objectively or substantively consider or weigh evidence." Because Plaintiffs' claims regarding "procedural" deficiencies are essentially substantive challenges to the Defendants' decision to designate Area 9B as a rural reserve, we conclude that the *Burford* abstention inseparability requirement has also been met for the as-applied procedural due process claims.

### 3. Disruption of state efforts to establish a coherent policy

The Oregon legislature expressly found that "[u]ncoordinated use of lands within this state threatens the orderly development, the environment of this state and the health, safety, order, convenience, prosperity and welfare of the people of this state." Or. Rev. Stat. § 197.005(1). The legislature further declared that the "[i]mplementation and enforcement of acknowledged comprehensive plans and land use regulations are matters of statewide concern." Or. Rev. Stat. § 197.013. "To promote coordinated administration of land uses consistent with comprehensive plans adopted throughout the state," the legislature "establish[ed] a process for the review of state agency, city, county and special district land conservation and development plans for compliance with [state] goals." Or.

Rev. Stat. § 197.005(2). The Oregon Land Reserves Statute is part of this statutory scheme.

Plaintiffs concede that the heart of their as-applied claims is the contention that the Defendants, two local governments and a state agency, misapplied their lawful authority or failed to take into consideration or properly weigh the relevant state-law factors under the Land Reserves Statute. Plaintiffs' prayer for relief specifically asks a federal court to reverse the rural reserve designation of Area 9B—a designation authorized by state law, made by intergovernmental agreement, approved by a state agency, and subject to judicial review by the Oregon Court of Appeals. Plaintiffs' property is only one portion of Area 9B, which includes 2,500 acres of property belonging to multiple Oregonians. And, because "the designation of urban and rural reserves are interrelated" under state law, a change to the rural reserve designation for Area 9B would likely require reconsideration of urban and rural reserve designations in Multnomah County or the Metro region "as a whole." *Barkers Five I*, 323 P.3d at 411–12 (requiring Commission to remand entire submittal to Metro and counties because of error in Washington County's application of rural reserve factors). Under these circumstances, we have no doubt that Plaintiffs' claims would "disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'" *NOPSI*, 491 U.S. at 362 (quoting *Alabama PSC*, 341 U.S. at 347).

## B.  Abuse of discretion review

Because we conclude that the requirements for *Burford* abstention have been met for Plaintiffs' as-applied claims, we review for abuse of discretion the district court's decision to abstain from exercising its jurisdiction over those claims.

"A district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021) (per curiam) (quoting *United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013)). Plaintiffs argue that the district court made a legal error by applying *Burford* abstention to their damages claims. For the reasons explained below, we conclude that the district court did not err.

In *Quackenbush v. Allstate Insurance Co.*, the Supreme Court clarified that, as a general rule, federal courts may dismiss or remand an action under *Burford* only when the relief sought is "equitable or otherwise discretionary." 517 U.S. 706, 730–31 (1996). However, the Court declined to hold "that abstention principles are completely inapplicable in damages actions," or to "resolve what additional authority to abstain might be provided under *Fair Assessment* [*in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100 (1981)]." *Id.*

In *Fair Assessment*, the Court affirmed the dismissal of a § 1983 damages action under the principles of comity that undergird abstention, including *Burford* abstention. 454 U.S. at 101–02. The Court concluded that dismissal of the petitioners' damages action was consistent with limited application of the comity principle because petitioners would "not recover damages under § 1983 unless a district court first determine[d] that [local and state officers'] administration of the County tax system violated petitioners' constitutional rights" and "that such a determination would be fully as intrusive as the equitable actions that are barred by principles of comity." *Id.* at 113. "In effect," the damages action would require the district court to "first enter a declaratory judgment like that barred in *Great Lakes* [*Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943)]," *id.*

at 113, where the petitioners sought "a declaratory judgment that the state tax law as applied to them was unconstitutional and void," *id.* at 110.

In *Martinez v. Newport Beach City,* we considered the application of *Younger* abstention to a § 1983 claim that included a claim for money damages. 125 F.3d 777, 782 (9th Cir. 1997), *overruled on other grounds by Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir. 2001). While *Burford* prevents undue federal interference with complex state administrative processes, *Younger* prevents such interference with state judicial proceedings. *Younger v. Harris*, 401 U.S. 37, 40–41 (1971). We noted that the Eighth Circuit "has interpreted *Quackenbush* and *Fair Assessment* to mean that 'a plaintiff's incidental insertion of a general claim for damages will not suffice to prevent the dismissal of a § 1983 case [under *Younger*] where the damages sought cannot be awarded without first declaring unconstitutional a state court judgment on a matter committed to the states.'" *Martinez*, 125 F.3d at 783 (quoting *Amerson v. Iowa*, 94 F.3d 510, 513 (8th Cir. 1996), *cert. denied* 519 U.S. 1061 (1997)). However, we concluded that *Younger* abstention was not appropriate in Martinez's case because "granting [his] requested relief would not necessarily involve the invalidation of a state statute or judgment." *Id.*

We conclude that the reasoning of *Amerson* and *Martinez*, which considered *Quackenbush* and *Fair Assessment* in the *Younger* abstention context, is equally applicable to *Burford* abstention. Accordingly, we also conclude that *Quackenbush* and *Fair Assessment*, in the *Burford* abstention context, mean the following: A plaintiff's incidental insertion of a general claim for damages will not prevent the dismissal of a § 1983 case under *Burford* where the damages sought cannot be awarded without, in

effect, first declaring unconstitutional either (1) a state statute establishing an administrative process for resolving a matter committed to the states, or (2) the proceedings or orders of a state administrative agency on a matter committed to the states.

Here, Plaintiffs allege, on information and belief, that the "designation of their property as rural reserve, rather than urban reserve, reduces the present value of [their] property," and they seek alleged "damages arising from that wrongful designation." A district court could not award damages without first declaring unconstitutional the administrative proceedings and orders of the Commission affirming the local governments' designation of Area 9B as rural reserve. There is no dispute that land use is a matter committed to the states.

Further, Plaintiffs primarily seek declaratory and injunctive relief, and their request for damages is incidental. *Compare Amerson*, 94 F.3d at 512 (plaintiff's damages claims were incidental because "most all of her claims for relief [were] equitable in nature"), *with Warmus v. Melahn*, 110 F.3d 566, 568 (8th Cir. 1997) (plaintiff's damages claims were not incidental because they were "his only claims"). For example, Plaintiffs seek a "judicial declaration that Defendants' policy, practice, designations, and agreements in connection with the reserve designation system violate Plaintiffs' rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment"; "[a] judicial declaration that the reserves designation review process fails to provide adequate judicial and quasi-judicial constitutional due process protections in their agency administrative reviews and in the truncated and limited judicial review in the Oregon Court of Appeals, and that such failures violate the Fifth and Fourteenth

Amendments"; and "[a] judicial declaration stating that the urban and rural reserves regulations violate the Due Process and Equal Protection clauses." Plaintiffs also seek injunctive relief, including permanent injunctions enjoining Defendants from acting on their reserve designations and requiring Defendants "to designate Area 9B or Plaintiffs' property as Urban Reserve." Indeed, Plaintiffs' complaint alleges that their "injuries will be redressed *only if* this Court declares Multnomah County, Metro, and [the Commission]'s actions and the rural reserve designation of Plaintiffs' property unconstitutional, and enjoins Multnomah County, Metro, and [the Commission] from its application and enforcement."

The district court did not abuse its discretion in abstaining from exercising its jurisdiction over Plaintiffs' as-applied claims in their entirety.

## II. Facial Claims

We review de novo the dismissal of Plaintiffs' facial constitutional claims for failure to state a claim. *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). Although Plaintiffs argue that the district court erred by dismissing their facial claims, this argument is vague, unsupported by any citations to case authority, and untethered to the applicable legal standards. Even after Defendants argued in their answering briefs that Plaintiffs waived their facial claims, Plaintiffs failed to address these deficiencies in the reply brief. Consequently, we conclude that Plaintiffs have abandoned their facial constitutional claims on appeal by failing to sufficiently develop their argument. *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are

generally deemed waived."); *United States v. Williamson*, 439 F.3d 1125, 1138 (9th Cir. 2006) (citing Fed. R. App. P. 28(a)(9)(A)).

\* \* \* \* \*

The district court appropriately abstained from exercising jurisdiction over Plaintiffs' as-applied claims under *Burford*. We also affirm the district court's dismissal of Plaintiffs' facial constitutional claims for failure to state a claim as a matter of law.

**AFFIRMED.**